**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Louis Leonard KITCHIN, Jr.,**
**Defendant-Appellant.**

No. 78-2843
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

April 9, 1979.

Rehearing Denied May 7, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Taylor W. Jones, Atlanta, Ga., for defendant-appellant.

William L. Harper, U. S. Atty., Julie E. Carnes, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before AINSWORTH, GODBOLD and VANCE, Circuit Judges.

PER CURIAM:

Affirmed on the basis of the findings and conclusions contained in the order of the district court which is appended hereto as an appendix.

AFFIRMED.

APPENDIX

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VERSUS | : | CRIMINAL ACTION NO. CR–78–144–A |
| | : | |
| LOUIS LEONARD KITCHIN, JR. | : | |

ORDER

The defendant in the above styled criminal case is charged with bribery of a public official and obstruction of justice in violation of 18 U.S.C. §§ 201(b) and 1503, respectively, by attempting to influence the then United States Attorney for the Northern District of Georgia, John Stokes, to dismiss federal criminal charges pending against Marshall Cohen. *United States v. Cohen*, Criminal Action No. CR–75–445–A (N.D. Ga.). Presently pending are the government's motion to disqualify the defendant's attorney, Taylor W. Jones, and the motion to withdraw of the defendant's former attorney, James Simmons.

The magistrate submitted a report and recommendation that Jones be disqualified. The court agrees but not for the reasons stated in the report and recommendation.

The defendant's alleged misconduct apparently came to light as the result of Cohen's motion to dismiss his own criminal action because of governmental misconduct or in the alternative to disqualify the United States Attorney for the Northern District of Georgia. Cohen charged that Stokes was influenced or subjected to influence. Judge Newell Edenfield, the presiding judge in Cohen's case, ordered a closed hearing on the matter at which Steven Ludwick, assistant United States Attorney, represented the government. In preparing for the hearing Ludwick worked with an FBI agent investigating Cohen's allegations and became aware of the defendant's role in the alleged attempt to influence Stokes. In fact, the defendant testified at the *in camera* hearing.

After Cohen's motions were denied, Stokes turned the matter over to Ludwick who by this time was chief of the Criminal Division. Ludwick assigned the case to another assistant United States Attorney who recommended that Stokes' office refrain from further involvement because of potential conflicts of interest. A similar recommendation was made by still another assist-

ant United States Attorney. At various times, Ludwick, who shared the same opinion, discussed with these assistants and Stokes the question of whether the case should be prosecuted by the United States Attorney for the Northern District in view of Stokes' posture as the target of the bribery attempt. Therefore, Ludwick was significantly involved in the development of this criminal action prior to indictment and was privy to relevant information then possessed by the government.

In February of 1978 Ludwick left the United States Attorney's office and accepted a position as an associate with Jones.[1] This occurred three months before the present indictment was filed. There is no evidence in the record to imply that Ludwick's joining Jones' law firm or the defendant's employment of Jones was influenced by Ludwick's previous participation in the case on behalf of the government. Jones is the only attorney of record for the defendant and Ludwick states that he would not participate in the case.

The issue presented by the government's motion requires a difficult balancing of a criminal defendant's right to counsel of his choice and the public's interest in the integrity of the judicial process and in a fair but vigorous prosecution of one accused of attempting to disrupt the enforcement of criminal laws.[2]

A defendant's right to counsel of his choice is not absolute and must yield to the higher interest of the effective administration of the courts. *Gandy v. Alabama*, 569 F.2d 1318 (5th Cir. 1978). The right is specifically limited by the trial court's power and responsibility to regulate the conduct of attorneys who practice before it. See *United States v. Dinitz*, 538 F.2d 1214 (5th Cir. 1976); *Kremer v. Stewart*, 378 F.Supp.

1195 (E.D.Pa.1974). The determination of whether the defendant's Sixth Amendment right overrides the conduct of his attorney is committed to the trial court's discretion. *United States v. Dinitz, supra*, at 1219.

On the other hand, acts which appear to violate the ABA Code or other accepted standards of legal ethics do not confer upon the trial court unfettered discretion to disqualify the attorney selected by a party. *Woods v. Covington County Bank*, 537 F.2d 804 (5th Cir. 1976). An attorney may be disqualified only when there is "a reasonable possibility that some specifically identifiable impropriety" actually occurred and, in light of the interests underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his choice. *Id.* at 810 and 813.

While the concerns expressed by the court of appeals in *Woods* are heightened by the fact that the defendant here is threatened with the loss of liberty, they are also tempered by the different circumstances presented in this case. In *Woods*, there was a technical violation of the ABA Code by the plaintiff's attorney raised, not by the potentially injured former client, but by the defendants. The court implied that the motion was prompted more by litigation tactics than a selfless interest in legal ethics. *Id.* at 813 and 817. In fact, the government in *Woods* gave every indication of condoning and encouraging the attorney's conduct which it was felt would benefit servicemen who were former prisoners of war. *Id.* at 814–816. Here the conflict of interest is invoked by the party whom it most seriously affects.

Also, it was not entirely apparent from the facts in *Woods* that the challenged attorney violated the spirit and intent of the

---

1. There are two other members of Jones' firm both of whom are also associates.

2. The government's ground for disqualification premised on Ludwick's potential status as a witness is meritless. Although the magistrate found a "substantial likelihood" that Ludwick would be called by either side, the portions of the record cited by him do not necessarily support this conclusion and, in fact, it is difficult to see how they are even relevant. At this point it cannot be said that "it is obvious" that Ludwick will be called to testify on behalf of either side. Code of Professional Responsibility of the American Bar Association (hereinafter referred to as the "ABA Code"), Disciplinary Rule 5–102.

standards of legal ethics. *Id.* at 814–18. Based on the ABA Code and the case law, the same cannot be said of Jones' representation of the defendant.

Under Canon 4 of the ABA Code and its predecessors, a lawyer may not accept employment representing interests adverse to those of a prior client. The purpose of this rule is to ensure the confidentiality of information received in the service of a previous employer. So long as the affected party can show that the matters involved in the previous representation are substantially related to those in an action in which the attorney represents an adverse party, the former client is entitled to the disqualification of the lawyer. *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83 (5th Cir. 1976); *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125 (5th Cir. 1971); *United States v. Trafficante*, 328 F.2d 117 (5th Cir. 1964); *American Roller Co. v. Budinger*, 513 F.2d 982 (3rd Cir. 1975); *Hull v. Celanese Corp.*, 513 F.2d 568 (2nd Cir. 1975); *Cord v. Smith*, 338 F.2d 516 (9th Cir. 1964).

In this case it is clear that these criteria have been met. Ludwick was actively involved on behalf of the United States in an early stage of this matter and is now associated with the defendant's attorney. The aggrieved party need not prove that Ludwick actually obtained confidential information nor that he has or will disclose it to his present employer. *In re Yarn Processing Patent Validity Litigation, supra*, at 89; *United States v. Trafficante, supra*, at 120; *American Roller Co. v. Budinger, supra*, at 984; *Hull v. Celanese Corp., supra*, at 572. The rationale for such a rule is obvious. A close examination of information Ludwick learned while an assistant United States Attorney might well vitiate the secrecy of the communications. See *Cord v. Smith, supra*, at 524. In addition, public trust in the confidence with which an attorney receives potential evidence from a client would soon disappear if the lawyer were permitted to establish the same fiduciary relationship with an adverse party. *In re Yarn Processing Patent Valid-*

*ity Litigation, supra*, at 89; *American Can Co. v. Citrus Feed Co., supra*, at 1128. That concern is even greater in a case involving the public's interest in the prosecution of alleged criminal acts as opposed to civil litigation.

Finally, given the presumed interplay among lawyers who practice together, the rule applies not only to individual attorneys but also requires disqualification of the entire firm as well as all employees thereof. *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706 (7th Cir. 1976); *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2nd Cir. 1976); *W. E. Bassett Co. v. H. C. Cook Co.*, 201 F.Supp. 821 (D.Conn.), *aff'd per curiam*, 302 F.2d 268 (2nd Cir. 1962); see *In re Yarn Processing Patent Validity Litigation, supra*, at 89; *American Can Co. v. Citrus Feed Co., supra*, at 1128. Thus, it does not matter that Ludwick is only an associate to the defendant's counsel of record.

Considering the state of the case law which precludes an actual examination into the content of confidences which Ludwick may have obtained or disclosed, there is no doubt that Jones' representation of the defendant would result in a "specifically identifiable" violation of ethical precepts. *Woods v. Covington County Bank, supra*, at 813. The remaining issue is whether the likelihood of public suspicion arising from the prohibited conduct outweighs the social interest in affording a criminal defendant the right to counsel of his choice. *Id.* at 810 and 813, n. 12.

In support of at least his own cause, the defendant makes two arguments. First, he has enjoyed a long and close relationship with Jones as his attorney which has led the defendant to put a great deal of trust in Jones' discretion and ability. Because the defendant believes that some of his activities may be of a dangerous and sensitive nature and therefore relevant to his defense, he is reluctant to disclose them to anyone but Jones. However, he does not make clear how this conduct could be related to a defense but, even if so, the court cannot seriously entertain the notion that

Jones is the only lawyer capable of maintaining a client's confidences.

The defendant next insists that he could not make a fee arrangement with a reputable criminal law attorney comparable to the one he now has with Jones and cannot afford any less favorable terms. Again, taking into account the many competent attorneys skilled in criminal trial practice, it would stretch the imagination to assume he could not procure adequate representation at a reasonable cost.

■ The personal preference of the defendant for representation by Jones is insufficient to outweigh the public suspicion that would likely be aroused by denial of the government's motion. As mentioned previously, more is at stake than the confidences of a private litigant. The public has an interest in seeing that criminal laws are enforced. For a former prosecutor to be associated with the lawyer who represents a person he earlier helped prosecute, even if only at an embryonic stage, would likely provoke suspicion and distrust of the judicial process. Moreover, the nature of the charges leveled against the defendant go to the very heart of the integrity of the prosecutor's office, particularly the idea that all persons are accountable for their criminal conduct regardless of wealth or political influence. To deny the government's motion would certainly not represent an adoption of "standards which can be imputed only to the most cynical members of the public." *Woods v. Covington County Bank,* supra, at 813. Consequently, society's interest in fair but unimpeded prosecution of the criminal law outweighs the defendant's right to counsel of his choice under the circumstances of this case.

■ There remains Simmons' motion to withdraw as counsel of record. By letter of June 5, 1978 the defendant informed the court that he had terminated Simmons' employ as of May 22, 1978. Pursuant to Rule 71.7, Local Rules for the Northern District of Georgia, the motion is granted.

Accordingly, the government's motion to disqualify and Simmons' motion to withdraw are granted. The defendant is directed to inform the clerk within thirty (30) days of the filing of this order of the name and address of new counsel. He shall then have thirty (30) days thereafter in which to file pre-trial motions.

So ordered this the 1 day of August, 1978.

(s) Albert J. Henderson, Jr.,
 Judge, United States District Court
 for the Northern District of Georgia