AMOCO CHEMICALS CORP., as Successor by Merger of Polaris Mills, Inc., Defendant and Third-Party Plaintiff,

v.

D.C. MacARTHUR, et al., Third-Party Defendants and Plaintiffs in Counterclaim.

Civ. A. No. C81–1907A.

United States District Court, N.D. Georgia, Atlanta Division.

April 1, 1983.

Sidney O. Smith, Jr., R. Neal Batson, Thomas Thorne-Thomsen, Alston & Bird, Atlanta, Ga., Theresa J. Arnold, Chicago, Ill., for defendant and third-party plaintiff.

Jeff C. Hamling, Hall & Hamling, G. Thomas Davis, Virginia R. Harper, Lawson & Davis, Steven J. Misner, Greene, Buckley, DeRieux & Jones, Atlanta, Ga., for third-party defendants.

## ORDER

FORRESTER, District Judge.

This action is before the court on a motion of third-party plaintiff Amoco Chemicals Corp. ("Amoco") to disqualify third-party defendant D.C. MacArthur's ("MacArthur") attorneys. The grounds for the motion to disqualify the law firm of Greene, Buckley, DeRieux & Jones ("Greene, Buckley") are that a current member of the firm has previously represented Amoco in connection with one of the claims contained in the third-party defendant's proposed amended counterclaim.

The facts are as follows. On October 6, 1982, Amoco, acting by and through one of its in-house counsel, Robert N. O'Connell ("O'Connell"), employed Mr. Charles Edwards, an Atlanta attorney specializing in labor law, to render legal advice on a mat-

ter dealing with an employment relationship between Amoco and MacArthur. During the initial telephone conversation between Messrs. O'Connell and Edwards on October 6, 1982, O'Connell explained the factors which prompted Amoco to consider termination of the employment relationship and requested Edwards' legal opinion as to whether their circumstances were legally sufficient under Georgia law. Initially, Edwards expressed a preliminary opinion but stated that he needed to conduct further research prior to rendering a final opinion. At that time, O'Connell's understanding was that Edwards was not affiliated with any law firm in Atlanta.[1]

On October 8, 1982, O'Connell again spoke to Edwards on this matter and, in a response to a question from Edwards, advised him that Mr. DeRieux was the attorney representing MacArthur. Edwards then remarked that he was in fact at Mr. DeRieux's office during that very telephone conversation.

On October 11, 1982, Amoco terminated MacArthur.

On October 12, 1982, O'Connell received a legal memorandum from Edwards dated October 7, 1982, which: (1) Restated the information expressed by O'Connell concerning Amoco's reasons for exploring termination; (2) summarized Georgia law on that issue, and (3) contained specific recommendations as to how Amoco should proceed. The total time involved in Edwards' effort was five hours.

On October 15, 1982, O'Connell received a letter from Edwards stating:

I am pleased that I was able to research your problem before you found out who represented the employee in question. Once we discovered that Bert DeRieux is the attorney in question, it became apparent that I have a conflict of interest: Greene, Buckley, DeRieux & Jones has made me a partnership officer which I

may accept. The offer came after our telephone conversation Friday, which may or may not create difficulties for me or the firm.

Edwards subsequently accepted the offer to become a partner at Greene, Buckley.

On November 4, 1982, MacArthur filed a motion for leave to assert three additional counterclaims, one of which alleges that Amoco wrongfully terminated its employment relationship with MacArthur in that Amoco acted illegally and out of stubborn and litigious motives in so terminating said relationship.

Since the inception of this lawsuit in October, 1981, MacArthur has accumulated legal fees amounting to more than $13,000 by November, 1982. Although this litigation has been pending for some time, it appears that discovery has focused primarily upon the claim between Lemaire & Dillies and Amoco, which has since been settled. It has been submitted that there have been only a few depositions taken which relate in any manner to the issues in dispute between the third-party plaintiff and third-party defendants. Further, it has been submitted that there has been no discovery taken to date with respect to MacArthur's amended counterclaim against Amoco for wrongful termination of his employment contract.

■ This court has the power and responsibility to regulate the conduct of attorneys who practice before it. *United States v. Kitchin*, 592 F.2d 900, 903 (5th Cir.1979). This is essential to both the quality of justice as well as the appearance of justice. *See Kitchin*, 592 F.2d at 904; *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 89 (5th Cir.1976); *Cord v. Smith*, 338 F.2d 516, 524–25 (9th Cir.1964).

The American Bar Association Code of Professional Responsibility, as well as the Code of Professional Responsibility promulgated by the State Bar of Georgia, provide significant evidence of the Bar's perception

---

1. It is submitted that Edwards asked O'Connell who the lawyer representing MacArthur was, but that O'Connell replied that he did not know. MacArthur's attorneys represent that they expect the evidence to show that had O'Connell then told Edwards who represented MacArthur, Edwards would have declined representation, since he was negotiating with Greene, Buckley, DeRieux & Jones at the time.

of acceptable conduct. This court notes, however, that these Codes circumscribe *minimal* acceptable conduct:

> The Model Code is designed to be adopted by appropriate agencies both as an inspirational guide to members of the profession and as a basis for disciplinary action when the conduct of a lawyer falls below the required minimum standards stated in the Disciplinary Rules.

ABA Code of Professional Responsibility, Preliminary Statement (1980).

> No code or set of rules can be framed which will particularize all the duties of the lawyers in the varying phases of litigation or in all the relations of the professional life. The following canons of ethics are adopted by the State Bar of Georgia as a general guide, yet the enumeration of particular duties should not be construed as a denial of the existence of others equally imperative, though not specifically mentioned.

State Bar of Georgia Code of Professional Responsibility, Preamble (1982).[2]

Canon Four of both the ABA and Georgia Code provide that a lawyer should preserve the confidences and secrets of the client. Furthermore, the ABA Code provides:

> If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment.

ABA Code of Professional Responsibility DR5–105(D) (1980).[3]

■ It is well settled that where an attorney represents a party in a matter in which the adverse party is that attorney's former client, the attorney will be disqualified if the subject matter of the two representations are "substantially related." *See, e.g., Schloetter v. Railoc,* 546 F.2d 706, 710 (7th Cir.1976); *Cinema Five, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1386 (2d Cir.1976); *American Can Co. v. Citrus Feed Co.,* 436 F.2d 1125, 1128 (5th Cir.1971).

During Edwards' representation of Amoco, O'Connell discussed with Edwards Amoco's reasons for exploring termination; Edwards provided O'Connell a memorandum on the Georgia law of whether Amoco had sufficient grounds to terminate its employment relationship with MacArthur; and Edwards' memorandum contained specific references as to how Amoco should proceed. *See* Affidavit of R.M. O'Connell. An issue in the pending litigation is whether Amoco wrongfully terminated its employment relationship with MacArthur. In his Proposed Amended Answer and Counterclaims of D.C. MacArthur, the following is alleged in Count II:

> 13. ... MacArthur and Amoco entered into a five-year employment contract, to expire on January 14, 1986.
>
> 14. Third-party plaintiff and defendant in counterclaim Amoco has breached the terms of said employment contract with D.C. MacArthur.
>
> 15. In breaching the employment contract with D.C. MacArthur, Amoco has acted illegally and out of stubborn and litigious motives.
>
> 16. As a result of the aforesaid actions of Amoco, the plaintiff in counterclaim D.C. MacArthur is entitled to recover of

---

**2.** Notwithstanding Judge Moye's conclusion that the Code of Professional Conduct as adopted by the Supreme Court of Georgia governs the conduct of members of the State Bar of Georgia practicing before the district court, *Dotson v. Floyd,* 529 F.Supp. 1056, 1065–66 n. 1 (N.D.Ga.1981), Local Court Rule 71.54 states, "[t]he standard of professional conduct of the members of the bar of this Court shall include the current canons of professional ethics of the American Bar Association." In addition, in *United States v. Kitchin, supra,* the Fifth Circuit adopted Judge Henderson's ABA analysis, and in *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 646 F.2d 1020 (5th Cir.1981), the ABA view was utilized. *See also Connell v. Clairol, Inc.,* 440 F.Supp. 17 (N.D.Ga.1977) (O'Kelley, J.).

**3.** The Georgia Code provides:

> If a lawyer is required to decline employment or to withdraw from employment under DR5–105, no partner or associate of his or her firm may accept or continue such employment.

State Bar of Georgia Code of Professional Responsibility DR5–105(D) (1982).

Amoco all amounts due and owing on the employment contract described above, together with interest from the date said amounts become due, owing and unpaid. 17. As a further result of the actions of Amoco outlined above, D.C. MacArthur is entitled to recover of Amoco as defendant in counterclaim, reasonable attorney's fees, and costs incurred in this action. Furthermore, in MacArthur's petition for declaratory judgment, where he seeks a ruling that the covenant not to compete contained in his employment contract with Amoco be declared null and void, the following is alleged: "On October 12, 1982, Amoco Chemicals Corporation wrongfully, without cause, and without notice, terminated the employment of D.C. MacArthur." Proposed Amended Answer and Counterclaims of D.C. MacArthur, ¶ 35. Thus, Amoco has delineated with specificity the subject matter and issues of Edwards' former representation, and has shown not only how they are substantially related to the pending suit, but identical. *See Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 646 F.2d 1020, 1029 (5th Cir.1981). This is not a case where Greene, Buckley is sought to be disqualified by virtue of Edwards' being vicariously disqualified due to his former partners' representing certain clients. *See American Can Co. v. Citrus Feed Co.,* 436 F.2d 1125 (5th Cir.1971).

■ Given the relationship between O'Connell and Edwards, it is reasonable to assume that Edwards was the recipient of confidences bearing on the subject matter of whether MacArthur ought to be fired. *See Schloetter v. Railoc, supra.* Inasmuch as Amoco has shown that the subject matters of the present and prior representa-

tions are substantially related, the court will presume that relevant confidential information was disclosed to Edwards during his period of representing Amoco. *Duncan,* 646 F.2d at 1028. To compel Amoco to show, in addition to establishing that the subject of the adverse representation is related to the former, the actual confidences entrusted to Edwards and their possible value to MacArthur would require the disclosure of the very matters intended to be protected by the rule protecting client confidences.[4] As the court in *Arkansas v. Dean Food Products Co.,* 605 F.2d 380 (8th Cir.1979), stated: "It is to be expected ... that a lawyer having earlier received confidential information could at least inadvertently direct his staff to proceed along lines dictated or influenced by that information." *Id.* at 387.

■ Unlike the ABA Code's specific injunctions against actual disloyalty and breaches of confidences, DR5–105(D)'s mandate of affiliate disqualification is entirely prophylactic. It is designed to prevent behavior not because the behavior is intrinsically improper but because it involves a risk of impropriety.[5] Inasmuch as partners in a law firm often share common economic and other interests in the success of one client's representation that may lead to deliberate sharing of information, the existence of incentives for a lawyer to seek and the affiliated to disclose specific client confidences that have been entrusted to the latter militates against allowing the presumption of imputed knowledge to be rebutted when the two attorneys are presently affiliated.[6] As the court in *Kitchin* stated: "[G]iven the presumed interplay among lawyers who practice together, the rule[7] applies not only

---

4. *See In Re Corrugated Container Antitrust Litigation,* 659 F.2d 1341, 1347 (5th Cir.1981); *Cheng v. GAF Corp.,* 631 F.2d 1052, 1056 (2d Cir.1980); *Arkansas v. Dean Food Products Co.,* 605 F.2d 380, 383–84 (8th Cir.1979); *United States v. Kitchin,* 592 F.2d 900, 904 (5th Cir.1979); *Smith v. New Orleans Federal Savings & Loan Association,* 474 F.Supp. 742, 746 (E.D.La.1979).

5. *Developments in the Law—Conflicts of Interest in the Legal Profession,* 94 Harv.L.Rev.

1244, 1369 (1981) (hereinafter cited as "Developments").

6. *Id.* at 1362.

7. The rule referred to in the quote from *Kitchin* can be articulated as follows: Pursuant to Canon Four, where a lawyer may not accept employment representing interests adverse to those of a prior client, so long as the affected party can show that the matters involved in the previous representation are substantially relat-

to individual attorneys but also requires disqualification of the entire firm as well as all employees thereof." 592 F.2d at 904. *See also Cinema Five, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1387 (2d Cir.1976) (recognition of "peculiarly close relationship existing among legal partners").

 Although Greene, Buckley has not proposed any screening procedures, *see Central Milk Producers Cooperative v. Sentry Food Stores, Inc.,* 573 F.2d 988 (8th Cir. 1978), this court would be adverse to screening in circumstances such as the instant case where there is a direct nexus between the former representation and the pending suit. Furthermore, in contrast to situations where the disqualification of a lawyer because of his prior role as a government lawyer requires the disqualification of his law firm, DR 9–101(B),[8] this case involves private sector attorneys. While a court may allow a former government lawyer to be isolated between "Chinese walls"[9] to reflect the need to foster government recruitment of talented attorneys by allaying their fears that their career prospects may be hurt by a period in public service, such a consideration is inapplicable in a private sector context such as this.[10]

This court notes, finally, that Amoco's attorneys moved to disqualify promptly upon learning of Edwards' becoming a partner with Greene, Buckley. *See Central Milk Producers Cooperative v. Sentry Food Stores, Inc.,* 573 F.2d at 992.

■ Although a client may suffer delay, inconvenience, and expense, the particular intrinsic values of the attorney-client relationship would be undermined if this court either denied disqualification or required the communications between Amoco and Edwards to be divulged. Moreover, the integrity of the judicial process requires

that the scope of disqualification be broader than attorney discipline or malpractice. Thus, this court's finding of disqualification does not entail a finding of improper conduct by either Edwards or Greene, Buckley.

For the reasons set forth above, the Motion of Third-Party Plaintiff Amoco Chemical Corporation to Disqualify Third-Party Defendant D.C. MacArthur's Attorneys is hereby GRANTED.

---

ed to those in an action in which the attorney represents an adverse party, the former client is entitled to disqualification of the lawyer.

**8.** For a thoughtful discussion of former government lawyers and the disqualification of their firms, *see Armstrong v. McAlpin,* 606 F.2d 28 (2d Cir.1979).

**9.** The term "Chinese wall" refers to any set of physical and procedural barriers intended to prevent one member of an organization from being exposed to information relating to a matter currently or formerly handled by one of his colleagues. *Developments,* at 1363 n. 390.

**10.** *See id.* at 1364–65.