**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————

No. 01-30656

———————————————

UNITED STATES OF AMERICA,

Plaintiff,

VERSUS

LEN DAVIS,

Defendant-Petitioner.

———————————————

On Petition for Writ of Mandamus to the United States
District Court for the Eastern District of Louisiana

———————————————

July 17, 2001

Before DeMOSS, PARKER and DENNIS,[1] Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Defendant-Petitioner, Len Davis appeals the district court's denial of his motion to proceed *pro se* during the penalty phase of his capital case and seeks, in the alternative, a writ of mandamus compelling the district court to allow him to exercise his right of self-representation. The Government filed a response supporting Davis's request for a writ of mandamus. The respondent district court relies on its extensive Order and Reasons, filing nothing further in this court. We grant the writ.

## I.     FACTS AND PROCEDURAL HISTORY

———————————————————————————————————————

[1]    Judge Dennis dissents, reserving the right to file a dissenting opinion at a later date.

Davis was convicted of civil rights murder in violation of 18 U.S.C. §§ 241 and 242, and sentenced to death. On appeal, we upheld the conviction but reversed the death sentence and remanded for a new penalty trial. *United States v. Causey*, 185 F.3d 407 (5th Cir. 1999). Upon remand, the district court appointed counsel to represent Davis. Davis announced to the court that he desired to represent himself, but agreed to allow appointed counsel to serve as "co-counsel," so long as Davis could remain in control of trial decisions. Since remand, Davis has consistently taken the position, against the advice of counsel, that he wishes to forego the presentation of traditional mitigating evidence during the penalty phase, indicating that he will focus instead on attacking the strength of the government's case as to guilt. The district court, as part of its competency determination, found itself persuaded that "residual doubt" as to guilt is a legitimate mitigating factor appropriately argued during the penalty phase of a capital case.

After holding a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975), the district court found that Davis's decision to represent himself was made knowingly and intelligently. However, the district court concluded that the *Faretta* right to self-representation does not extend to criminal sentencing, and even if it does, Davis's *Faretta* interests are outweighed by the Eighth Amendment requirement that the death penalty not be imposed

2

arbitrarily and capriciously. Davis filed an interlocutory appeal and an alternative petition for writ of mandamus.

## II.    DISCUSSION

### A.    Statutory Right to Self-Representation

We begin by noting that Davis has a statutory right to represent himself pursuant to 28 U.S.C. § 1654 which states, "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."   Although Congress has clearly spoken on the issue presented in this case, we construe the district court's Eighth Amendment analysis as calling into question the constitutionality of § 1654 as it relates to the sentencing phase of capital murder trials.   For that reason, we must address the constitutional underpinnings of the district court's decision.

### B.    *Faretta's* Focus on Individual Autonomy

In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court held that a criminal defendant has a constitutional right to represent himself if he voluntarily and intelligently chooses to do so.  The Court held that the Sixth Amendment affords an accused the right to personally make his own defense because the "defendant, and not his lawyer or the State, will bear the personal consequences of a conviction." *Id.* at 834.  The defendant's choice "must be honored out of that respect for the individual which is

the lifeblood of the law." *Id*. (quoting *Illinois v. Allen*, 397 U.S. 337, 350-51 (1970) (Brennan, J., concurring)) (internal quotation marks omitted).

**C.    Does *Faretta* Extend to the Punishment Phase of Trial?**

Last year, the Supreme Court stated that *Faretta* "was confined to the right to defend oneself at trial" and held that a defendant does not have a right of self-representation on appeal. *Martinez v. Court of Appeal*, 528 U.S. 152, 154 (2000). The Supreme Court reasoned that "the status of the accused defendant, who retains a presumption of innocence throughout the trial process, changes dramatically when a jury returns a guilty verdict." *Id.* at 162. Furthermore, "the autonomy interests that survive a felony conviction are less compelling than those motivating the decision in *Faretta*. Yet the overriding state interest in the fair and efficient administration of justice remains as strong as at the trial level." *Id*. at 163. The district court considered the reasoning of *Martinez* and held that *Faretta*'s right to self-representation does not extend past the guilty verdict to the sentencing phase of a criminal trial. The district court was persuaded that, assuming the constitutional basis of *Faretta* does not dictate a right to self-representation, Davis should not be allowed to pursue his preferred trial strategy because, as a matter of policy, a criminal defendant should not be afforded the opportunity to interfere with the sentencing authority's gathering

4

of information on any issue relevant to choosing the correct sentence. *See* FED. R. CRIM. P. 32(b)(4)(providing that a presentence investigation report "must" contain "information about the defendant's history and characteristics, including any prior criminal record, financial condition, and any circumstances that, because they affect the defendant's behavior, may be helpful in imposing sentence . . . .").

*Martinez* focuses on the distinctions between trial and appellate stages of a criminal proceeding: a lay appellant has no right to be present during appellate proceedings, *Martinez*, 528 U.S. at 163, and the defendant, not the state, normally initiates appellate process. *Id*. at 162. Nothing in *Martinez* can be read to push the ending point for the Sixth Amendment right of self-representation in criminal proceedings back to the end of the guilt/innocence phase of a bifurcated trial proceeding.

## D. Does *Faretta* Extend to Capital Cases?

The district court held, in the alternative, that Davis has no right of self-representation under *Faretta*, which was a non-capital case, because the death penalty is profoundly and fundamentally different from other punishments. *Lockett v. Ohio* 438 U.S. 586, 605 (1978). Citing the Eighth Amendment requirement that the death penalty must not be wantonly or freakishly imposed, *see Furman v. Geogia*, 408 U.S. 238, 310 (1972) (Stewart, J., concurring), the district court concluded that if Davis were allowed to represent

5

himself, the jury would not be provided with adequate information with which to make a reliable sentencing decision. The district court opinion makes a meticulous survey of jurisprudence relating to the presentation of mitigating evidence during the sentencing phase of capital-murder trials, concluding that Davis's right to mount his own defense in his own way must give way to the public's interest in avoiding arbitrary and capricious imposition of the death penalty. The court reasons that such interest can be adequately served only by appointed counsel who presents a full panoply of mitigating evidence to the sentencing jury.

We commend the district court's thoughtful grappling with this issue. However, *Faretta* is clear. If Davis made a knowing and intelligent waiver of his right to counsel, he is entitled to represent himself. "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Faretta*, 422 U.S. at 820.

> The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant--not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists.

*Id.* (footnotes omitted).

The jury will have the benefit of whatever defense Davis

chooses to mount, as well as any evidence the Government (charged in this matter with seeking not the death penalty but justice) offers. The district court itself may interpose questions to witnesses. The Eighth Amendment prohibition against arbitrary and capricious imposition of the death penalty does not prohibit a jury, thus armed with information, from reaching a verdict.

Based on the foregoing, we conclude that Davis has a clear and indisputable right to mandamus relief and no adequate alternative to mandamus exists. *See In re: American Airlines, Inc.*, 972 F.2d 605, 608 (5th Cir. 1992), *cert. denied sub nom. Northwest Airlines, Inc. v. American Airlines, Inc.*, 507 U.S. 912 (1993). We grant the petition, and the writ is issued to remand this action for a sentencing hearing wherein Davis will be allowed to proceed *pro se* if he wishes to do so and knowingly and intelligently waives his right to counsel. The district court may of course appoint stand-by counsel for Davis if such is appropriate.

Petition GRANTED, writ ISSUED, and action REMANDED.

DENNIS, Circuit Judge, dissenting:


With all due respect, I disagree not only with the majority's decision of the important res nova constitutional issue presented, but also with its jurisdictional decision to issue mandamus, and with its having done so summarily without oral argument and without inviting an amicus curiae to advocate the interest of the people of the United States in the fair and efficient administration of justice in the imposition of federal capital punishment.[2] The majority has decided, probably for the first time in a federal death penalty case, apparently without understanding the import of its ruling, that a convicted capital defendant has an absolute right, under the Sixth Amendment, to waive his right to counsel and to act as his own attorney, for the purpose of either not making a defense or making only an ineffective defense, because he prefers a death rather than a life sentence.[3] The government's prosecutor

---

[2]Fed. R. App. P. 21(b)(4)and(5) provides that when a party petitions for mandamus, the court of appeals may invite or order the trial-court judge to address the petition or may invite an amicus curiae to do so; and may require additional briefing and oral argument by the parties and amicus curiae.

[3]In Len Davis's pro se Response to Government's Objection to "Hybrid" Representation, served on May 10, 2001, he said: "I do not beg for my life, and I am not afraid to die. I have already informed the Court that I do not intend to present a defense at the penalty trial, and the government has filed pleadings with the Court stating that the decision is so bizarre that it calls into question my mental competence." Id. at 2. The district court, in its Order and Reasons filed May 16, 2001, said: "In his most recent filing with this Court, Davis stated that he does not intend to present a defense at the penalty phase at all." Id. at 2-3. "In

8

and the defendant's attorney, arm in arm, persuaded the majority to reverse the trial court and authorize Len Davis to act pro se in defenseless submission to the government's efforts to put him to

---

this case, Davis has persisted in his intention that the jury not have the benefit of any mitigating evidence in the penalty phase of his case.  Most recently, he has declared that he wants nothing done at the penalty phase on his behalf at all. . . .  Davis in effect is appropriating to himself a judgment that only society, through the jury in this case, can properly make." Id. p.13.  The original brief of appellant, Len Davis, filed by his counsel in this court on June 8, 2001, states:  "At various conferences and hearings before district court Mr. Davis announced that he did not intend to present any evidence, or participate in any aspect of the trial, directed toward convincing the jury that he should not receive the death penalty. . . .  When he remained steadfast regarding his strategy the government filed a motion to have him examined by a psychiatrist. . . .  [A]s the trial date . . . was approaching, and the defendant remained adamant that he would not defend against the death penalty, the trial court issued its ruling that he could no longer serve as pro se counsel." Id. at 5-6. "[T]he present situation [is one] where the defendant has announced that he does not intend to present any mitigating evidence at the penalty trial." Id. at 9. "Mr. Davis believes that the[] legal issues [he plans to raise in a motion for new trial and/or Rule 2255 motion] will of necessity have to be viewed much more closely by the district and appellate courts if he is facing a death sentence, than they would if he were facing a life sentence.  While he has no desire to die he has weighed carefully the prospects of a death sentence against spending the rest of his life in jail – and he finds life in prison to be more onerous.  Believing that legal errors that led to his conviction will be examined more scrupulously if he has a death sentence facing him, Mr. Davis made the strategic decision that he does not want to put on mitigating evidence in an effort to convince the jury that he should not die." Id. at 10-11.  "[W]e believe that the legal strategy which he has undertaken will likely result in his execution.  Conversely we believe that if we could mount a full mitigation defense that there is a very good possibility we could save his life.  That being so, why are we before this Court arguing a legal position which, if successful, would likely doom our client?  The answer lies in the Faretta decision.  It is his life, not ours.  'The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.' Faretta v. California, supra at 820." Id. at 13.

9

death. No attorney was allowed to advocate the interest of the people of the United States in seeing that the federal death penalty is carried out only after a full and fair adversarial proceeding.

Yet, even without the benefit of adversarial representation and oral argument, which I would have preferred that we require, I am convinced that, given the particular circumstances of this case, the district court reached the correct result in refusing to allow Len Davis to waive his right to counsel, to adopt a false posture of making a defense, and to defenselessly acquiesce in his own death sentence. I reach this conclusion on the facts of this particular case, however, finding it unnecessary to decide whether a capital defendant may waive his right to counsel and represent himself during the sentencing phase under different circumstances. Len Davis is seeking to represent himself, not in his defense but, rather, for the purpose of rendering himself defenseless against the prosecution's efforts to impose the death penalty upon him. He does not distrust or lack confidence in his court-appointed counsel. Therefore, in this particular case, Len Davis's Sixth Amendment right to represent himself in his defense has become so attenuated that it is clearly outweighed by the interest of the people of the United States in the fair and efficient administration of justice in the imposition of federal capital punishment. See Martinez v. Court of Appeal of California, 528 U.S. 152, 163 (2000). Thus, I agree with the district court's

10

result, although I disagree with its conclusion that, as a matter of law, a convicted defendant can never have the right to represent himself in the sentencing phase of a capital case.[4]  If Davis were seeking to act as his own attorney for the purpose of defending himself against the death penalty, instead of acquiescing in it, the balance of interests might favor upholding his right of self-representation, particularly if he had expressed a lack of satisfaction or trust in his appointed counsel.

Although I am not at this time prepared to adopt all of the district court's profoundly thoughtful reasons, I am convinced that the trial court's initial approach to an analysis of the present case was correct.  The district court focused first on the underlying rationale of  the Supreme court's latest decision on Sixth Amendment right to self-representation, Martinez, id., in weighing Len Davis's assertion of the right against the interest of the people of the United States in the fair administration of justice.  Unlike the district court, however, the majority of this court failed to appreciate the importance of the analytical approach implied by Martinez's rationale or its elaborations on Faretta.

---

[4]Moreover, I cannot agree with one possible interpretation of the district court's instructions to defense counsel at page 2 of its order and reasons, i.e., if the instructions are interpreted as requiring defense counsel to introduce indiscriminately all possibly mitigative evidence or to determine the defense strategy without any consideration of the defendant's wishes.  I do not think that was the district court's intention, and I add this note simply to express my disagreement with such a reading.

11

"As the Faretta opinion recognized, the right to self-representation is not absolute." Martinez, 528 U.S. at 162. "Even at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." Id. at 162.[5] More important, the Supreme Court in Martinez held that "[t]he status of the accused defendant, who retains a presumption of innocence throughout the trial process, changes dramatically when a jury returns a guilty verdict." Id. Furthermore, the Court, after noting that "the Faretta majority found that the right to self-representation at trial was grounded in part in a respect for individual autonomy[,]" id. at 160, added

---

[5]This circuit's precedents holding that a criminal defendant's right to be represented by counsel of his choice may be outweighed by the public interest in the administration of justice are closely analogous to the situation here regarding a defendant's right to self-representation. First, the Sixth Amendment right to counsel, like the right of self-representation, is not absolute. United States v. Thier, 801 F.2d 1463, 1471 (5th Cir. 1986). Accordingly, this court has held that "[t]he right of defendants in criminal cases to retain an attorney of their choice does not outweigh the countervailing public interest in the fair and orderly administration of justice." United States v. Salinas, 618 F.2d 1092, 1093 (5th Cir. 1980). In United States v. Kitchin, 592 F.2d 900, 903 (5th Cir. 1979), the government moved to disqualify the defendant's attorney for a conflict of interest. The court first noted the difficulty in the "balancing of a criminal defendant's right to counsel of his choice and the public's interest in the integrity of the judicial process and in a fair but vigorous prosecution . . . ." Id. at 903. The court then held that "[a] defendant's right to counsel of his choice is not absolute and must yield to the higher interest of the effective administration of the courts." Id. Likewise, in Gandy v. Alabama, 569 F.2d 1318, 1323 (5th Cir. 1978), the court held that "[t]he right to choose counsel may not be subverted to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice."

12

that "the autonomy interests that survive a felony conviction are less compelling than those motivating the decision in Faretta." Id. at 163. Yet, the Court said, the "overriding state interest in the fair and efficient administration of justice remains" constantly strong throughout the trial and appeal. Id.

Thus, in holding that a convicted criminal defendant does not have the federal constitutional right to represent himself on direct appeal in Martinez, the Supreme Court's underlying rationale was that the Faretta balance between the innocent individual's autonomy interest and the State's interest in the fair and efficient administration of justice begins to be drastically altered in favor of the latter when the defendant has been found guilty beyond a reasonable doubt. Applying the same rationale to the present case, I conclude that Len Davis's autonomy interests, which began to wane upon his conviction, have been further diminished by the purpose for which seeks to act as his own attorney. It bears repeating that his purpose is neither to disengage from unreliable or incompetent counsel nor to make a real adversarial criminal defense, but to ensure receiving a death sentence by offering an intentionally ineffective defense or none at all. Len Davis's claim that his death penalty will enhance the poignancy of his post-trial remedies rings hollow as a criminal trial defense strategy. Ultimately, he admits that it is his preference for a death sentence over a life term that motivates his avoidance of a penalty trial defense in favor of a long-shot chance

13

at being freed on appeal. In any event, Len Davis has no intention of making a penalty trial defense but appears determined to acquiesce in being sentenced to death.

The right to self-representation, based on the Sixth Amendment guarantee of access to an effective means of defense, surely tapers to little more than an illusion and becomes completely outweighed by the national public interest in fair and efficient administration of justice, when the convicted defendant seeks to use it not to make a defense, or to disassociate from untrustworthy or unsatisfactory counsel, but to render himself defenseless against the death penalty. Neither the holding nor the reasoning in Faretta requires the recognition of a constitutional right to self-representation by a convicted person who asserts it only for the purpose of choosing the death penalty. Cf. Martinez, 528 U.S. at 163. In requiring Davis, under these circumstances, to accept the continued representation by an appointed counsel whom he trusts and believes can and will effectively make a defense for him in the penalty hearing, the district court did not deprive him of a constitutional right. Cf. id. at 164.

The majority's argument that the present case falls squarely within the holding of Faretta is riddled with flaws. Faretta asserted his right of self-representation "[w]ell before the date of trial," not after his conviction. Faretta v. California, 422 U.S. 806, 807 (1975). Faretta voluntarily and intelligently waived his right to counsel and sought to conduct his own defense because

14

he believed the public defender was too "loaded down" to represent him effectively.  Id.  He did not assert the right unintelligently so as to ensure that he received the criminal punishment the state sought to impose.

In Faretta the Court made clear that the Sixth Amendment does not guarantee Len Davis or any defendant the right to engage in a sham self-representation for the purpose of abandoning his adversarial defense.  On the contrary, the Court held that "the Amendment constitutionalizes the right in an adversarial criminal trial to make a defense as we know it," id. 818, and that that right does not "arise[] mechanically from a defendant's power to waive the right of assistance of counsel."  Id. at 820. Repeatedly, the Faretta Court explained that the right guaranteed is not the mere form of representation or self-representation for any purpose imaginable; the right constitutionalized by the Sixth Amendment is  "the absolute and primary right to conduct one's own defense in propria persona."  Id. at 816 (emphasis added). Accordingly, the Court described the right as "the right of the accused personally to manage and conduct his own defense in a criminal case," id. at 817, and as the "basic right to defend himself if he truly wants to do so."  Id.  See also id. at 819 (The Sixth Amendment "grants to the accused personally the right to make his defense."); id. at 819-820 (The right is "to make one's defense personally."); id. ("The right to defend is given directly to the accused."); id. (describing the criminal defendant's "right to

15

defend himself personally"); id. ("[T]he right to make a defense is [not] stripped of the personal character upon which the Amendment insists."); id. at 830 (discussing "the primary right of the accused to defend himself"); id. at 832 (same); id. at 835 (same)(internal quotations and citations omitted).

Over and over, the Court makes clear in Faretta what the majority cannot see:  the right is not to make a non-adversary non-defense under the guise of a mere formalistic or nominal self-representation; the right is to make a genuine adversary defense. There is no constitutional right to mismanage, sabotage, or abandon a defense. The right is to act as one's lawyer, like an officer of the court, to put on a true adversarial defense, not to flout the dignity of the courts and the Constitution by betraying one's pretended cause.

Consequently, for all of the foregoing reasons, Len Davis failed to establish the criteria for the issuance of mandamus. See In re American Airlines, 972 F.2d 605 (5th Cir. 1992)("The standards [for issuance of mandamus] are well established:  [P]etitioners must show that they lack adequate alternative means to obtain the relief they seek . . . and carry the burden of showing that [their] right to issuance of the writ is clear and indisputable.")(quoting Mallard v. United States Dist. Ct. for the S. Dist. of Iowa, 490 U.S. 296, 309 (1989)(internal quotations and citations omitted)). Because of the holdings and principles established by Martinez, its further explanation of Faretta, and Faretta itself, Len Davis's

16

right to issuance of the writ is not clear and indisputable. On the contrary, it seems clear and indisputable that the convicted Len Davis has no right of self representation because he seeks not to use it for its constitutional purpose but to abuse it for the purpose of seeking his own death. And, even if we were to assume arguendo that he has been prejudiced by an erroneous ruling of the district court, Len Davis has an adequate alternative means to obtain relief by renewing his claim of error on appeal. The majority concludes that Len Davis has carried both burdens but does not convincingly show that the right to mandamus in these unprecedented circumstances is "clear and indisputable," and the majority does not even attempt to explain why Len Davis will not be able to obtain relief on appeal if the district court's ruling amounts to constitutional, reversible error.