**UNITED STATES of America**

v.

**Edwin T. CHESHIRE and Lonnie Dyer.**

**Crim. A. No. 89–2–A.**

United States District Court,
M.D. Louisiana.

March 7, 1989.

P. Raymond Lamonica, United States Attorney, M.D.La., Richard B. Launey, and Randall B. Miller, Assistant U.S. Attys., M.D.La., Baton Rouge, La., for the U.S.

M. Michelle Fournet, Baton Rouge, La., for defendant Cheshire.

Anthony Marabella and John E. DiGiulio, Baton Rouge, La., for defendant Dyer.

## RULING ON MOTION TO DISQUALIFY ATTORNEYS

JOHN V. PARKER, Chief Judge.

In this case the government seeks to disqualify the attorney for each of the two defendants. The claim for disqualification is predicated upon the prior representation by Mr. Anthony Marabella, Jr., the attorney for Mr. Dyer, of Reginald Jones, a key government witness in this case. The government alleges that the attorney for Mr. Cheshire, Ms. M. Michelle Fournet, is disqualified by reason of her status as an "associate" of Mr. Marabella.

This court has concluded that these attorneys must be disqualified. Such a motion requires the court to undertake an examination of the facts and to carefully balance the right of each defendant, guaranteed by the Sixth Amendment, to the effective assistance of counsel against the potential harm to the integrity of the administration of justice arising out of the conflict of interest of counsel. This court is fully aware of the very sensitive nature of the attorney-client relationship and fully aware that a defendant's choice of counsel should be presumed correct and should be honored in the absence of strong reasons to the contrary.

This court is also aware of the "catch 22" situation that a trial judge finds himself in as a result of such a motion. As the Supreme Court recently commented in *Wheat v. United States,* —— U.S. ——, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988):

> [T]rial courts confronted with multiple representations face the prospect of being "whipsawed" by assertions of error no matter which way they rule. If a district court agrees to the multiple representation, and the advocacy of counsel is thereafter impaired as a result, the defendant may well claim that he did not receive effective assistance. See, e.g., *Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). On the other hand, a district court's refusal to accede to the multiple representation may

result in a challenge such as petitioner's in this case ...

108 S.Ct. at 1698.

Initially, the court, as an impartial observer, must note that the skepticism of the government's motives by counsel for the defense is not properly placed. It is correct that both lawyers, Mr. Marabella and Ms. Fournet, are good lawyers but the court does not subscribe to the notion suggested, that the government is attempting to have them disqualified because they are good lawyers. The court accepts the government's declaration of good faith in bringing the situation to the attention of the court. The court further states its personal familiarity with both Mr. Marabella and Ms. Fournet and states for the record that they are ethical and hard working lawyers, neither of whom would intentionally violate a client's confidence or an ethical rule of the profession.

Being fully aware of the possibility of a land mine exploding at each step of the proceedings, we move to a discussion of the facts and law applicable thereto.

The defendants, Mr. Cheshire and Mr. Dyer, are charged in a six count indictment with conspiracy in violation of 18 U.S.C. § 371, alleging that they owned apartment units and conspired with each other and with Charles E. Quin, Sr., to corruptly give money and credits on debts to Reginald Jones and other officials of the East Baton Rouge Housing Authority during 1986 and 1987 with the intent to influence and reward them in connection with Housing Authority business, particularly payment of rentals for low cost housing, with two counts of giving such money and credits in violation of 18 U.S.C. § 666 and 2, with one count of using extortionate means to collect claims against the Housing Authority in violation of 18 U.S.C. § 894 and 2, as well as two unrelated counts of violating 18 U.S.C. 894 and 2.

During the period of time alleged in the indictment, Reginald Jones was the Executive Director of the Housing Authority. He is named in counts one through four of the indictment and there is no question but that he will be a key government witness at the trial. Jones has already pled guilty to one count of conspiracy to embezzle and obtain funds of the Housing Authority by fraud in violation of 18 U.S.C. § 371 and one count of an eight count indictment charging violations of 18 U.S.C. § 1623, making false declarations to a grand jury concerning his knowledge of and participation in payments having been made by apartment owners and others to Housing Authority officials. Jones has already been sentenced. His plea agreement requires that he cooperate fully with federal law enforcement officers "regarding these and other violations of federal law by providing truthful information" and further requires that he testify at any trial.

In the early stages of the investigation (September 1987 through mid-January, 1988) which led to the indictment and conviction of Mr. Jones, Mr. Marabella represented him, including the period of time when Jones testified before the grand jury. It is admitted that Jones furnished confidential information to Mr. Marabella regarding his activities while he was Executive Director of the Housing Authority, including discussions of the activities of Mr. Cheshire and Mr. Dyer and their relationship to Mr. Jones. At the time Mr. Jones entered his plea agreement with the government, Mr. Marabella no longer represented him. Mr. Marabella now represents Mr. Dyer, as we have noted.

Ms. Fournet represents Mr. Cheshire. She and three other lawyers sublease office space from Mr. Marabella. The names of Ms. Fournet, Mr. Marabella and James C. Hrdlcka, appear on a letterhead styled "Marabella, Fournet and Hardlcka, an Association of Attorneys at Law." According to their affidavits, they use this letterhead, "primarily for the purpose of convenience in billing clients in the cases in which the named attorneys associate each other from time to time." Ms. Fournet and Mr. Marabella thus have the same mailing address, Suite 407, Taylor Building, 251 Florida Street, Baton Rouge, and share the same suite of offices. Each declares, and the court accepts their declarations, that, despite the letterhead which they disseminate

to the public, each lawyer practices completely independently of each other lawyer, with separate files, clients, bank accounts, secretaries and office staff. Both Ms. Fournet and Mr. Marabella declare and the court again accepts the declaration, that Ms. Fournet had no participation in Mr. Marabella's representation of Mr. Jones and that she received no privileged information about the case from Mr. Marabella. It is conceded that during the course of the attorney-client relationship, Mr. Marabella did inform Mr. Jones that Ms. Fournet would accompany him to a grand jury session if Mr. Marabella could not make it. As it turned out, Mr. Marabella did make the grand jury session and Ms. Fournet performed no legal services of any kind for Mr. Jones.

Mr. Jones testified at the hearing on this motion, that he became concerned when he heard that his former lawyer, Mr. Marabella, was representing Mr. Dyer and that Mr. Marabella's "associate," Ms. Fournet, was representing the other defendant in this case. He complained about it to an F.B.I. agent. Mr. Jones further declared that he will in no event waive the attorney-client privilege as to information divulged by him to Mr. Marabella and he will not consent to Mr. Marabella's representation or to Ms. Fournet's representation of the new clients.

The government argues that the Jones case was a related matter and that both lawyers are disqualified from representing the new clients. Mr. Marabella's position is that his representation of Jones, "while tangentially concerning Edwin T. Cheshire and Lonnie Dyer, was a separate and distinct set of circumstances."

Mr. Marabella conceded at the hearing that he could not and never intended to cross examine Jones, who he acknowledges will be a key witness against his present client. The solution proposed by Mr. Marabella is that Mr. Dyer has independently hired co-counsel for the specific and limited purpose of cross examination of Jones and that Mr. Marabella will participate in neither the preparation for nor the cross examination. Mr. Marabella acknowledged to the court at the hearing that he proposes to make the opening statement in the case and the closing argument on behalf of Mr. Dyer, including analysis of the weight to be accorded the testimony of his former client, Mr. Jones.

In cases of joint representation, Rule 44, Fed.R.Crim.P., requires that the court inquire into the matter and that, "unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel." See *Wheat v. United States*, —— U.S. ——, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

Local Rule 1F3 of this court adopts the canons of professional ethics of the American Bar Association as the standard for lawyers practicing in this court. In addition, the lawyers involved in this case are members of the Louisiana Bar which has adopted the ABA standards almost verbatim.

ABA Rule 1.6(a) provides in part, "A lawyer shall not reveal information relating to representation of a client unless the client consents, after consultation ..." The comment under that rule elaborates:

The observance of the ethical obligation of a lawyer to hold inviolate confidential information of the client not only facilitates the full development of facts essential to proper representation of the client but also encourages people to seek early legal assistance.

Almost without exception, clients come to lawyers in order to determine what their rights are and what is, in the maze of laws and regulations, deemed to be legal and correct. The common law recognizes that the client's confidences must be protected from disclosure. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is upheld.

A fundamental principle in the client-lawyer relationship is that the lawyer maintain confidentiality of information relating to the representation. The client is thereby encouraged to communicate fully and frankly with the lawyer

even as to embarrassing or legally damaging subject matter.

█ In this case, it is acknowledged that confidential communications were made between Mr. Jones and Mr. Marabella. Moreover, there is a presumption that a lawyer receives confidential communications in the course of his representation of a client. See, e.g., *United States v. Shepard,* 675 F.2d 977 (8th Cir.1982).

ABA Rule 1.7 provides in part:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) **each client consents after consultation.** (emphasis supplied)

There is no question but that one client, Mr. Jones, has declined to consent.

ABA Rule 1.9 reads in part as follows: A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; ...

There is no question but that the interests of Mr. Marabella's present client, Mr. Dyer, are materially adverse to the interests of his former client, Mr. Jones, because it is largely upon the basis of Mr. Jones' testimony that the government hopes to convict Mr. Dyer. In like manner, there can be no serious argument that the Jones case is a "substantially related matter" as used in ABA Rule 1.9 to the case against Cheshire and Dyer. Although the counts to which Mr. Jones pleaded guilty do not involve Mr. Cheshire and Mr. Dyer by name, those counts do involve illegal payments to Housing Authority officials in return for rental and other payments to apartment owners and others. Defendants, Mr. Cheshire and Mr. Dyer, are alleged in this indictment to be apartment owners who made illegal payments to

Jones and others in return for unauthorized rental payments on behalf of low income tenants. Jones has divulged information to his former lawyer about his activities involving Mr. Cheshire and Mr. Dyer, and Jones will be a witness at their trial. Rule 1.9 establishes a clear and actual conflict of interest which would prohibit Mr. Marabella from representing Mr. Dyer in this case, absent at least consent of both present and former clients.

The Supreme Court's most recent teachings on this subject are found in *Wheat v. United States,* supra. There the defendant, Wheat, was charged in a multiple defendant indictment with a far-flung drug distribution conspiracy. Shortly before the trial, two of the defendants pled guilty and became government witnesses against the remaining defendants. Two days before the trial, the defendant, Wheat, moved to enroll as his counsel the same lawyer who represented the two defendants who had pled guilty and were to testify. All three, the two former clients and the present client, specifically consented to that representation. On motion of the government, the trial judge refused to allow the representation, holding that an irreconcilable conflict of interest existed which could not be waived by the defendants. The Supreme Court affirmed. The Court commented upon the importance of the Sixth Amendment's guarantee of the right to counsel and noted:

> Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers. (citations omitted) 108 S.Ct. at 1697.

In the present case, counsel point out that both defendants, Mr. Cheshire and Mr. Dyer, are willing to waive the right to conflict free counsel and proceed to trial with counsel of their choice. As noted, the former client, Mr. Jones, has specifically declined to consent. Even waiver by all

involved would not necessarily resolve the matter. As the Court observed in *Wheat:*

> Nor does a waiver by the defendant necessarily solve the problem for we note, without passing judgment on, the apparent willingness of Courts of Appeals to entertain ineffective assistance claims from defendants who have specifically waived the right to conflict-free counsel. (citations omitted) 108 S.Ct. at 1698.

It is not this court's province to pass judgment on the Courts of Appeals but, with an acute awareness of the penchant of those august bodies to indulge every reasonable presumption against the waiver of fundamental rights, the court declines to accept the proffered waivers.

In *Wheat,* the Court further explained the question of waiver:

> Petitioner insists that the provision of waivers by all affected defendants cures any problems created by the multiple representation. But no such flat rule can be deduced from the Sixth Amendment presumption in favor of counsel of choice. Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. Both the American Bar Association's Model Code of Professional Responsibility and its Model Rules of Professional Conduct ... impose limitations on multiple representation of clients. (citations omitted) Not only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation. 108 S.Ct. at 1697.

The Court further commented:

> Thus, where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented. 108 S.Ct. at 1698.

The Court also observed:

> For these reasons we think the District Court must be allowed substantial latitude in refusing waivers of conflict of interest not only in those rare cases

where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses ...

108 S.Ct. at 1699.

■ As we have noted, at least under ABA Rule 1.9 an actual conflict exists as to Mr. Marabella's representation of Mr. Dyer. This is one of those rare cases to which the Court referred in *Wheat.* In this case, Mr. Marabella acknowledges that he could not, under the canons of ethics, conduct the cross examination of his former client. His proposed solution—having a separate lawyer cross examine Mr. Jones—does not eliminate the conflict. At the very least, in order to represent his present client Mr. Marabella must be completely free and unfettered to analyse, characterize and repudiate the testimony of his former client in closing argument. Moreover, this judge views it as an almost impossible task for a lawyer to participate throughout the course of a trial but not suggest a single question or style for cross examination of the most important witness against his present client. It should be noted that in *Wheat,* the lawyer was prohibited from representing former and present clients even though all consented thereto. Mr. Jones has specifically refused to consent.

Under the circumstances of this case, the court concludes that Mr. Marabella may not be allowed to represent Mr. Dyer.

■ The question as to Ms. Fournet's representation of Mr. Cheshire is a closer question. As noted, she tells the court, and the court accepts that statement, that she has no actual knowledge concerning the case of Mr. Jones and that she actually performed no legal services on his behalf. Ms. Fournet's problem arises because of ABA Rule 1.10, Imputed Disqualification. That rule provides, in part, that, "(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules

1.7, 1.8(c), 1.9 or 2.2." The comment under that rule discusses the definition of "firm":

> ... Whether two or more lawyers constitute a firm within this definition can depend on the specific facts. For example, two practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the Rules ... Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the rule that is involved. A group of lawyers could be regarded as a firm for purposes of the rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the rule that information acquired by one lawyer is attributed to another.

Here Mr. Marabella is disqualified at least because of the provisions of ABA Rule 1.9 which prohibit representation of a client in a substantially related matter in which that client's interests are materially adverse to the interests of a former client—the rule that the lawyer should not represent opposing parties in litigation. Both lawyers assert, and the court accepts the assertion as true, that they are not actually partners or actually associated, although they frequently associate one another on individual cases. The problem is that they present themselves to the public in a way suggesting that they are a firm. Their letterhead expressly states that they are "an Association of Attorneys at Law." Mr. Jones testified that he has received communications on that letterhead from what he assumed was the firm of Marabella, Fournet and Hardlcka. It certainly is not uncommon for lawyers to share office space or even secretaries, here and in other parts of the country. See *Anwar v. United States*, 648 F.Supp. 820 (N.D.N.Y.1986). It is not common, however, for lawyers who are not associated with each other to share the same physical space and to have a joint letterhead which they regularly disseminate to the public, announcing that they are an association of attorneys at law. Any member of the public apprised of those two factors, that they occupy the same suite of offices and that they share a common letterhead reading "Marabella, Fournet and Hrdlcka, an Association of Attorneys at Law" would conclude that they are a law firm. This court does not consider it unreasonable to hold the lawyers to the position which they voluntarily represent to the public, that they are, indeed, a law firm.

As the court commented in *United States v. Kitchin*, 592 F.2d 900 (5th Cir. 1979), cert. denied 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979):

> So long as the affected party can show that the matters involved in the previous representation are substantially related to those in an action in which the attorney represents an adverse party, the former client in entitled to the disqualification of the lawyer. 592 F.2d at 904.

In this case, Mr. Jones, the former client, is not technically making the motion to disqualify his former lawyer. The motion is made by the government. Mr. Jones, the former client, has made it plain, however, that he does not consent to the present representation by his former lawyer. This court concludes that the Sixth Amendment's right to counsel must yield in this case to the integrity of the administration of justice. As the court in *Kitchin* further commented:

> [G]iven the presumed interplay among lawyers who practice together, the rule applies not only to individual attorneys but also requires disqualification of the entire firm as well as all employees thereof. (citations omitted) 592 F.2d at 904.

If one concludes, as I have here, that these lawyers constitute a "law firm" within the meaning of ABA Rule 1.10, then "none of them" may represent a new client when any of them would be prohibited from representing that client under ABA Rule 1.9. The disqualification applies without regard to actual information or knowledge or participation of the associate.

For these reasons, this court reluctantly concludes that both Mr. Marabella and Ms. Fournet must be disqualified from further participation in this case.