No. 63,388

In The Matter of the Petition of THAI DO HOANG for a Writ of Habeas Corpus.

(781 P.2d 731)

Opinion filed October 27, 1989.

*G. Craig Robinson*, of Wichita, argued the cause for petitioner.

*Debra S. Byrd*, assistant Sedgwick County district attorney, argued the cause for respondent.

The opinion of the court was delivered by

McFARLAND, J.: In this habeas corpus proceeding the petitioner, Thai Do Hoang, contends a mistrial was improperly declared and a retrial would violate his constitutional right not to be placed in jeopardy twice for the same offense.

Hoang was charged with two counts of first-degree felony murder (K.S.A. 21-3401), one count of arson (K.S.A. 21-3718), and one count of burglary (K.S.A. 21-3715). The charges arose from an incident occurring during the early morning of October 8, 1986, wherein two men died in an after-hours fire at a restaurant. The State contended Hoang had been hired to set the fire, and the two dead men had been hired by Hoang to assist him in completing his arson contract. The district court held that felony murder was inapplicable to deaths of accomplices and dismissed

the felony-murder charges. The State appealed therefrom, and we reversed the dismissals (*State v. Hoang*, 243 Kan. 40, 755 P.2d 7 [1988]). A more detailed account of the facts from which the charges arose and the rationale utilized in reversing the dismissals are set forth in this earlier opinion.

On remand, the case was called for jury trial commencing December 19, 1988. Hoang was represented by Richard Ney of the Sedgwick County Public Defender's Office. On the day preceding trial, Mr. Ney discovered his office had represented Binh Van Tran who was a key prosecution witness against Hoang. The Tran case had been handled while Hoang's case was on appeal. Ney advised the prosecutor, Mark Sevart, of the Tran representation on the opening day of the Hoang trial. Sevart advised that if Ney had a problem with the situation, he (Ney) should so advise the court. The following morning (December 20, 1988), Sevart made a motion in limine to prohibit defense counsel from bringing out the prior representation. The trial court was thus alerted, immediately after opening statements had been made, that a possible conflict of interest existed with defense counsel. The trial court was concerned with Ney's anticipated cross-examination of Tran. Ney advised that Tran had been represented by another attorney in his office, and he did not believe he had a conflict as a result thereof. The court initially stated that if Sevart and Hoang, personally, agreed on the record that Ney could properly continue as defense counsel then the trial could proceed, otherwise he would declare a mistrial. This point was never reached as Sevart objected on the basis he had no way of determining what confidential communication had been received by Ney's office during its representation of Tran. The court held that a conflict of interest existed, disqualified Ney as defense counsel, and declared a mistrial. New counsel was appointed.

A motion was filed in the district court by defense counsel seeking dismissal of the charges on the grounds the mistrial had been granted improperly and that a trial would result in Hoang being twice placed in jeopardy contrary to the Fifth Amendment of the United States Constitution. The hearing on this motion was held on February 10, 1989. The motion was denied. Trial was scheduled for March 6, 1989. On February 21, 1989, this original habeas corpus proceeding was filed in our court which

was accompanied by a request for a stay of the scheduled trial. The stay was granted and a response was requested.

A petition for a writ of habeas corpus is an appropriate method for challenging a trial court's pretrial denial of a claim of double jeopardy. *In re Habeas Corpus Petition of Mason,* 245 Kan. 111, Syl. ¶ 1, 775 P.2d 179 (1989); *In re Berkowitz,* 3 Kan. App. 2d 726, Syl. ¶ 2, 602 P.2d 99 (1979). See *Kamen v. Gray,* 169 Kan. 664, 669, 220 P.2d 160 (1950).

A claim of double jeopardy is the issue before us, but its resolution involves determination of three related questions. Did the trial court abuse its discretion in:

(1) holding Ney had a conflict of interest;

(2) disqualifying Ney from serving as defense counsel; and

(3) declaring a mistrial.

The trial court is placed in an extremely difficult situation when confronted with facts indicating that defense counsel in a criminal case may have a conflict of interest due to prior representation of a prosecution witness. The judge must consider the whole picture not just the desires of the parties. The balancing of interests becomes extremely involved. If a defense attorney's scope of cross-examination of a key prosecution witness is restricted to avoid possible violation of the attorney-client privileges of the witness, then the defendant has major claims of ineffective assistance of counsel and lack of a fair trial. If the examination is not restricted, then the witness' attorney-client privilege may be violated. It is a significant public policy that individuals be free to disclose confidential information to their attorneys without fear of subsequent examination on and disclosure of those communications. The judge has a duty to maintain the integrity of the administration of the justice system.

A similar dilemma was presented in *U.S. v. Cheshire,* 707 F. Supp. 235 (M.D. La. 1989), wherein the government sought to disqualify two defense attorneys. One of the attorneys had represented an individual who was now a key government witness against the attorney's present client. An "associate" of this attorney represented a second defendant. The attorneys proposed to hire an independent attorney to cross-examine the witness in question. The court rejected this arrangement and disqualified both attorneys. The court noted the "associate" merely officed with the other attorney and kept separate files, but they operated

under the letterhead which stated they were "an Association of Attorneys at Law." The public, it was noted, could conclude the two attorneys were in a law firm. In its holding, the court stated:

"This court has concluded that these attorneys must be disqualified. Such a motion requires the court to undertake an examination of the facts and to carefully balance the right of each defendant, guaranteed by the Sixth Amendment, to the effective assistance of counsel against the potential harm to the integrity of the administration of justice arising out of the conflict of interest of counsel. This court is fully aware of the very sensitive nature of the attorney-client relationship and fully aware that a defendant's choice of counsel should be presumed correct and should be honored in the absence of strong reasons to the contrary.

"This court is also aware of the 'catch 22' situation that a trial judge finds himself in as a result of such a motion. As the Supreme Court recently commented in *Wheat v. United States*, 486 U.S. 153, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988):

" '[T]rial courts confronted with multiple representations face the prospect of being "whipsawed" by assertions of error no matter which way they rule. If a district court agrees to the multiple representation, and the advocacy of counsel is thereafter impaired as a result, the defendant may well claim that he did not receive effective assistance. See, e.g., *Burger v. Kemp*, 483 U.S. 776, 107 S. Ct. 3114, 97 L. Ed. 2d 638 (1987). On the other hand, a district court's refusal to accede to the multiple representation may result in a challenge such as petitioner's in this case . . . 108 S. Ct. at 1698.' " 707 F. Supp. at 236-37.

In *U.S. ex rel. Stewart on Behalf of Tineo v. Kelly*, 870 F.2d 854 (2d Cir. 1989), defense counsel had represented a key prosecution witness, a confidential informant, in the past. The attorney offered to limit his cross-examination of the witness to information contained on the witness' "rap sheet." The court stated:

"This appeal presents the question whether the district court uas correct in holding that the trial court denied Tineo's Sixth Amendment right to counsel of his choice because of a potential for conflict of interest. We conclude that the district court, relying on a magistrate's report issued prior to the decision in *Wheat v. United States*, 486 U.S. 153, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988), reached the wrong result. In *Wheat*, a federal court defendant requested substitution of counsel approximately one week prior to the start of his trial. The attorney he wanted was representing two other defendants involved in various aspects of the defendant's case. The government raised the issue of conflict of interest. The Supreme Court held that the district court correctly denied defendant's request for substitution. It described the competing interests as 'the extent to which a criminal defendant's right under the Sixth Amendment to his chosen attorney is qualified by the fact that the attorney has represented other defendants charged in the same criminal conspiracy.' *Wheat*, at 159, 108 S. Ct. at 1697.

"The soluton to this clash between a defendant's Sixth Amendment right to counsel and the same defendant's right to a fair trial is a balancing of interests that is committed to the discretion of the trial judge, who has 'broad latitude' in this matter. *Id.* at 163, 108 S. Ct. at 1699. There is a presumption in favor of a defendant's choice of counsel, but this may be overcome 'by a showing of a serious potential for conflict.' *Id.; see also United States v. Arrington*, 867 F.2d 122, 128 (2d Cir. 1989) (right to counsel of choice not absolute). In balancing what can be competing interests of the Sixth Amendment, the trial court has 'an independent duty to ensure that criminal defendants receive a trial that is fair.' *Wheat*, 486 U.S. 161, 108 S. Ct. at 1697; *see also United States v. Scopo*, 861 F.2d 339, 344 (2d Cir. 1988).

"Although it differs from our case factually, *Wheat* controls. In both *Wheat* and the instant case, the trial judge reviewed and balanced the defendant's right to a fair trial and his right to counsel of choice. We do not believe that the trial judge abused his discretion and so we reverse the judgment entered pursuant to the order of the district court granting Tineo's petition.

"*Wheat* emphasized the trial judge's duty to preserve the integrity of the justice system by assuring defendants a fair trial. It specifically held that where a serious potential conflict of interest exists, a trial judge has broad discretion to refuse a defendant his or her choice of counsel. Such a serious potential existed here.

"Linn was presented with the possibly conflicting interests of one client, Tineo, and one former client, the informant. There was no guarantee that Tineo's interests could be served without vigorous cross-examination of the informant in a manner wholly inconsistent with the informant's interests. To limit cross-examination of the informant to his rap sheet may have prejudiced Tineo, had more searching inquiries been necessary for complete evaluation of the testimony against Tineo. Alternatively, not to limit the cross-examination might have violated the rights of the informant, if, for impeachment purposes, competent cross-examination would delve into matters not contained in the rap sheet. The compromise proffered pretrial here was not acceptable professional conduct; an attorney should never offer to be less thorough or diligent in the interest of his client. *See United States v. Iorizzo*, 786 F.2d 52, 54-58 (2d Cir. 1986).

"It is hard to conceive of a conflict of interest between clients that would not be serious. *See, e.g., Camera v. Fogg*, 658 F.2d 80, 86 (2d Cir.) (actual conflict between clients sufficient to show prejudice from multiple representation by attorney), *cert. denied*, 454 U.S. 1129, 102 S. Ct. 981, 71 L. Ed. 2d 117 (1981). In the circumstances presented by this case, there can be no doubt that Linn's potential conflict was serious, that his loyalty was divided between a client and a former client, and that representing Tineo would have created a strong appearance of impropriety. This is no less true simply because Linn's representation of the clients did not concern the same matter, as was the case in *Wheat*. Two clients' interests in separate matters may be just as opposed, and the potential for conflict just as serious." 870 F.2d at 856-57.

Both *Cheshire* and *Tineo* involved claims of denial of counsel of choice under the Sixth Amendment rather than double jeopardy as before us, but are significant in determining the propriety

of the trial court's determination relative to Ney. Both cases also involved attorneys personally selected by defendants as opposed to the situation herein where the attorney was appointed, in essence, from a pool. See also *United States v. Tocco*, 575 F. Supp. 100, 102 (N.D. Ill. 1983), wherein the court said a conflict of interest occurs when a defense attorney has represented a prosecution witness because of the contrary interests of defense counsel in cross-examining the witness effectively and maintaining the privileged confidences of the witness. Presumably, the witness/former client reposed confidences in his attorney by virtue of their relationship. *United States v. Calabria*, 614 F. Supp. 187, 192 (E.D. Pa. 1985); *United States v. Tocco*, 575 F. Supp. at 102. Absent such a presumption, the court would be required to inquire into the attorney-client relationship and thereby destroy the essence of that relationship. *United States v. Calabria*, 614 F. Supp. at 192. Even if the attorney is not actively representing the witness, "[t]he attorney's duty to preserve the confidences of [the witness-client] does not end when the attorney-client relationship ends. The attorney continues to be obligated to protect his former client's privileged communications until he is released from the duty [by the witness-client's consent or as otherwise provided by the Model Rules of Professional Conduct]. [Citation omitted.]" 614 F. Supp. at 192.

Rule 1.9 of the Model Rules of Professional Conduct provides:

"A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known." 1988 Kan. Ct. R. Annot. 209.

The Comment to MRPC 1.9 states, in part:

"The scope of a 'matter' for purposes of Rule 1.9(a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client . . . .

"Information acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about that client when later representing another client.

"Disqualification from subsequent representation is for the protection of clients and can be waived by them. A waiver is effective only if there is disclosure of the circumstances, including the lawyer's intended role in behalf of the new client.

"With regard to an opposing party's raising a question of conflict of interest, see Comment to Rule 1.7. With regard to disqualification of a firm with which a lawyer is associated, see Rule 1.10." 1988 Kan. Ct. R. Annot. 209.

The Comment to MRPC 1.7 states: "[A] lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated." 1988 Kan. Ct. R. Annot. 203.

MRPC 1.10 concerns the disqualification of a firm with which the lawyer is associated and provides: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2." 1988 Kan. Ct. R. Annot. 210.

The Comment to MRPC 1.10 defines the term "firm" to include a legal services organization.

As the trial court noted herein, it was most unfortunate that the prior representation of Tran was not brought to the court's attention prior to trial. A more orderly and less traumatic scenario would have resulted. However, the trial judge had to make his decision on the facts as they existed. The court found Ney had a conflict of interest. Did the court abuse its discretion in so holding? We believe not. A trial judge has broad discretion in balancing the conflicting interests and public policies involved, as previously discussed. Clearly, the public defender who had represented Tran in the earlier proceeding could not have represented Hoang herein. Ney was a public defender in the same legal services organization (in fact, the head of the organization). Under MRPC 1.10 the trial court could properly find Ney had imputed knowledge of any confidential information relayed by Tran to Ney's colleague.

We conclude the trial court did not abuse its discretion in finding that a conflict of interest existed.

Next, then, we must determine whether or not the disqualifi-

cation of Ney was an abuse of the trial court's discretion. As we have seen from the preceding discussion, there is ample authority for the trial court's determination that a restriction on Ney's cross-examination of the witness would be inappropriate. Further, MRPC 1.10 has the effect of imputing the disqualification of Tran's former attorney to Ney, as they were members of the same legal services association. We find no abuse of discretion in the disqualification of Ney.

Next, we must decide if the declaration of a mistrial constitutes an abuse of discretion.

K.S.A. 22-3423 provides:

"(1) The trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because:

(a) It is physically impossible to proceed with the trial in conformity with law; or

(b) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law and the defendant requests or consents to the declaration of a mistrial; or

(c) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution; or

(d) The jury is unable to agree upon a verdict; or

(e) False statements of a juror on *voir dire* prevent a fair trial; or

(f) The trial has been interrupted pending a determination of the defendant's competency to stand trial.

"(2) When a mistrial is ordered, the court shall direct that the case be retained on the docket for trial or such other proceedings as may be proper and that the defendant be held in custody pending such further proceedings, unless he is released pursuant to the terms of an appearance bond."

K.S.A. 21-3108 provides, in part:

"(1) A prosecution is barred if the defendant was formerly prosecuted for the same crime, based upon the same facts, if such former prosecution:

. . . .

(c) Was terminated without the consent of the defendant after the defendant had been placed in jeopardy, except where such termination shall have occurred by reason of: (i) The illness or death of an indispensable party; or (ii) the inability of the jury to agree; or (iii) the impossibility of the jury arriving at a verdict. A defendant is in jeopardy when he or she is put on trial in a court of competent jurisdiction upon an indictment, information or complaint sufficient in form and substance to sustain a conviction, and in the case of trial by jury, when the jury has been impaneled and sworn, or where the case is tried to the court without a jury, when the court has begun to hear evidence."

In *State v. Bates*, 226 Kan. 277, 597 P.2d 646 (1979), we stated:

"The general rule as to double jeopardy as stated in K.S.A. 1977 Supp. 21-3108

is that once jeopardy has attached, the defendant may not be reprosecuted for the same crime unless the trial was terminated because of some action on the part of the defendant or the conviction was set aside as a result of the defendant's appeal or motion. *Price v. Georgia,* 398 U.S. 323, 26 L. Ed. 2d 300, 90 S. Ct. 1757 (1970). Even when a mistrial is declared without the consent of the defendant or upon his motion, a retrial is still constitutionally permissible *if* the judge exercised sound discretion in determining justice required a mistrial. *United States v. Jorn,* 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547 (1971). The test to be applied in assessing the judge's discretion in declaring a mistrial and discharging the jury from giving a verdict is whether there is a *manifest necessity* for the act, or the *ends of public justice would otherwise be defeated. United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165 (1824).

"The federal standards derived from the Fifth Amendment double jeopardy clause are now applicable to the states via the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969). This court recognized the 'manifest necessity' doctrine in *State v. Finley,* 208 Kan. 49, 490 P.2d 630 (1971). There the 'manifest necessity' for declaring a mistrial was juror misconduct. Neither party was responsible for the incident. The court stressed the unforeseeable nature of such a contingency in holding that the mistrial was warranted and the reprosecution was not barred by reason of double jeopardy.

"The United States Supreme Court in *Illinois v. Sommerville,* 410 U.S. 458, 35 L. Ed. 2d 425, 93 S. Ct. 1066 (1973), considered the 'manifest necessity' test. There defendant was indicted for theft but the indictment was incurably defective under Illinois law because the State did not allege that the defendant intended to permanently deprive the owner of his property. This discovery was made after the jury was impaneled and sworn but before any evidence was submitted. The State moved for a mistrial, realizing there was reversible error. The defendant objected but the motion was granted. The defendant alleged double jeopardy in the second trial.

"The court held there was no double jeopardy, stating: '[W]here the declaration of a mistrial implements a reasonable state policy and aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interests in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice.' 410 U.S. at 471.

"This issue has evolved into a *balancing of interests* analysis; the appellant's right not to be placed in double jeopardy versus the public interest in seeking a final determination through a second trial.

"Appellant asserts she had the right to have her trial completed by the first jury in the first trial. This is a valued right recognized by the United States Supreme Court in *United States v. Jorn,* 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547 (1971);

" 'Certainly it is clear beyond question that the Double Jeopardy Clause does not guarantee a defendant that the Government will be prepared, in all circumstances, to vindicate the social interest in law enforcement through the vehicle of a single proceeding for a given offense. Thus, for example, reprosecution for the same offense is permitted where the defendant wins a reversal on appeal of a conviction. *United States v. Ball,* 163 U.S. 662 (1896); see *Green v. United*

*States*, 355 U.S. 184, 189 (1957). The determination to allow reprosecution in these circumstances reflects the judgment that the defendant's double jeopardy interests, however defined, do not go so far as to compel society to so mobilize its decisionmaking resources that it will be prepared to assure the defendant a single proceeding free from harmful governmental or judicial error. But it is also clear that recognition that the defendant can be reprosecuted for the same offense after successful appeal does not compel the conclusion that double jeopardy policies are confined to prevention of prosecutorial or judicial overreaching. For the crucial difference between reprosecution after appeal by the defendant and reprosecution after a *sua sponte* judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his "valued right to have his trial completed by a particular tribunal." See *Wade v. Hunter*, 336 U.S. at 689.

" 'If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. In the absence of such a motion, the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. See *United States v. Perez*, 9 Wheat., at 580.' 400 U.S. at 483-485." 226 Kan. at 283-85.

Having concluded the trial court did not abuse its discretion in holding Ney had a conflict of interest and in disqualifying him from serving as defense counsel, we must determine whether or not there was a manifest necessity for declaring a mistrial over defendant's objection. What were the trial judge's options? Before him were a prosecutor, a jury, and a now attorneyless defendant. He could hardly recess the trial, appoint new counsel, give the new attorney adequate time to prepare for trial, and reconvene at some undeterminable distant future date. This was not a defect which could be remedied by any less drastic alternative than declaration of a mistrial. The declaration of a mistrial meets the manifest necessity test.

We must conclude that petitioner's claim of double jeopardy is without merit. We have analyzed what led to the declaration of mistrial and have found no abuse of discretion.

The writ is denied.

SIX, J., not participating.