THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID CARLTON, Defendant-Appellant.

Third District   Nos. 79-54, 78-454 cons.

Opinion filed March 14, 1980.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Defendant, David Carlton, was indicted for burglary and charged by information with robbery in the circuit court of Peoria County. Following his guilty plea to the burglary charge and a stipulated bench trial on the robbery charge, he was convicted of both offenses and perfected the consolidated appeal at bar.

On April 5, 1978, there was a robbery at a Go-Tane service station in Peoria, Illinois. Within minutes of the robbery Gary Jones called the police and described the robbers as three young black men. Jones also described their clothing and said they had fled on foot.

A report of the robbery was broadcast over the police radio and Officer George Fulton, who was patrolling nearby, drove in the direction of the site of the crime. Within two minutes after hearing the broadcast, Fulton saw a motor vehicle with four black males in it pulling out of a tavern parking lot less than a block from the Go-Tane station. As the parking lot was less than a block from the robbery site, and the tavern was rarely frequented by blacks, Officer Fulton stopped the vehicle.

After the stop, a more detailed description of the robbers was broadcast, revealing that some of the clothing worn by the occupants of the vehicle matched the description of the robbers' clothing. All the occupants were ordered out of the vehicle and subsequently searched and arrested. Before the car was towed away, Fulton noticed a cap gun under the front seat and rolls of coins in an oil can. The occupants were then

taken to the Go-Tane station where they were identified by Jones and defendant was then transported to the police station where he made a statement.

Prior to trial on the robbery charge, defendant filed motions to suppress certain items of physical evidence, including the alleged victim's identification of defendant and an extrajudicial statement made by defendant. The issue raised at the hearing was whether the automobile in which defendant was riding as a passenger had been lawfully stopped. If the stop were unlawful, then any evidence obtained as a result of the stop would be inadmissible. At the hearing the State did not attack defendant's standing to make such a motion. Jones testified that the robbers fled on foot in the opposite direction from the parking lot. Officer Fulton agreed that the direction of flight may have been given on the radio, although he could not recall it, and also testified that there were no traffic violations which justified the stop. He could not see the clothing of the occupants before the stop, and a complete description was not broadcast until after the stop. Fulton also agreed that the parking lot was not exclusively reserved for whites. In ruling that the stop was justified, the trial court stated that stopping three black males at that time of night when an armed robbery had taken place within a block of the parking lot was reasonable.

On June 13, 1978, immediately prior to a stipulated bench trial on the robbery, there was discussion regarding a plea to both the burglary and the robbery and a concurrent sentence of three years for each crime. Since defendant did not plead guilty to both crimes at that time, the trial court postponed sentencing until after the burglary charge had been resolved and a presentence investigation made. At the stipulated bench trial, the prosecuting attorney read into the record what she believed the State's evidence would show. Defendant tendered no evidence but did object to " * * * any testimony involving identification by Mr. Jones at the show-up or any testimony of the statement that this defendant gave to Officer Crady for the reason stated in the motion to suppress." Defendant was found guilty and later sentenced to three years' imprisonment.

On June 19, 1978, defendant's counsel, Assistant Public Defender Daniel Field, made an oral motion to withdraw as defendant's counsel because he believed there was a conflict of interest between his representation of defendant and a co-defendant in the robbery case. (See *People v. Drummer* (1980), 81 Ill. App. 3d 626.) Judge Calvin D. Stone took the motion under advisement but no ruling appears in the record. On August 7, 1978, Judge Stone accepted defendant's plea of guilty on the burglary charge and sentenced him to an indeterminate term of 4½ to 15 years.

At the sentencing hearing, Judge Stone was informed by all parties

that no plea agreement had been made. Stone was apparently aware of the plea bargaining and statements of Judge Covey, but he was told by Field that he was under no obligation to follow Judge Covey's views. Defendant said he was satisfied with his lawyer and nothing was said about the pending motion to withdraw.

A timely motion to withdraw plea of guilty was filed in the burglary case. It asserted the excessive sentence but not a conflict of interest. Timely notice of appeal was filed in the robbery case.

On appeal defendant raises the following issues: (1) whether the police officer unlawfully stopped the motor vehicle in which defendant was a passenger; (2) whether both convictions should be reversed on the ground of counsel's conflict of interest because the record shows no ruling or adequate hearing on defense counsel's motion to withdraw; (3) whether the robbery conviction must be reversed because the stipulated bench trial was tantamount to a guilty plea requiring appropriate admonitions under Supreme Court Rule 402; (4) whether the sentence imposed for the burglary conviction was excessive; (5) whether defendant should be resentenced on the burglary charge since the trial judge was influenced by the robbery conviction.

■■ Since the stopping of a motor vehicle and the detaining of its occupants is a seizure within the meaning of the fourteenth amendment to the United States Constitution, the standard of reasonableness determines the legality of the stop. (*Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391.) This standard requires "* * * at least articulable and reasonable suspicion * * * that either the vehicle or an occupant is otherwise subject to seizure for violation of law * * *." (*Delaware v. Prouse* (1979), 440 U.S. 648, 663, 59 L. Ed. 2d 660, 673, 99 S. Ct. 1391, 1401.) Nothing in the *Prouse* opinion prohibits the stopping of vehicles as long as the stops are not unreasonably intrusive on the privacy of the motorist and his passengers and do not involve the unconstrained exercise of discretion by the police officer. *Delaware v. Prouse* (1979), 440 U.S. 648, 663 n.26; 59 L. Ed. 2d 660, 674 n.26; 99 S. Ct. 1391, 1401 n.26; *People v. Franks* (1979), 72 Ill. App. 3d 940, 391 N.E.2d 574.

■■ We must, therefore, determine whether Officer Fulton had at least reasonable and articulable suspicion that defendant and the others in the vehicle had participated in the armed robbery at the Go-Tane station. Within minutes of receiving a radio transmission that the armed robbery had been committed by three black youths, Fulton saw a motor vehicle containing four black youths leave a parking lot less than a block from the robbery site. While the youths had fled "the station on foot," we believe it reasonable for Fulton to assume that they had a motor vehicle and driver nearby. Fulton also observed that the tavern across the street was considered a white tavern and the patrons of the tavern usually used that

parking lot. While we would not be satisfied with any individual reason given by Fulton, we believe that considering the total circumstances Fulton could reasonably infer that the crime had been committed by the occupants of the motor vehicle. See *People v. Blakes* (1977), 55 Ill. App. 3d 654, 341 N.E.2d 453.

Since we find that the stop was legal, we also find that any evidence found as a result of the stop is admissible. Therefore we shall not discuss the matters of suppression or standing.

■■ The sixth amendment to the United States Constitution guarantees effective assistance of counsel. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457.) This means that counsel must have undivided loyalty to the defendant. (*People v. Sprinkle* (1976), 39 Ill. App. 3d 740.) It does not mean, however, that joint representation is unconstitutional *per se*. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173.) Before we can rule on a claim of ineffective counsel due to conflict of interest when counsel represents co-defendants, the defendant making the claim must "* * * show an actual conflict of interest manifested at trial * * *." *People v. Berland* (1978), 74 Ill. 2d 286, 299-300.

We must therefore examine the record in the instant case. Field, prior to defendant's plea on the burglary charge, orally moved to withdraw because of his dual representation of defendant and co-defendant Drummer on the robbery charge. Judge Stone stated that he failed to see how there could be a conflict between representation of defendant on the burglary charge and representation of defendant and a co-defendant on the robbery charge. This was apparently the only discussion of a possible conflict. No ruling on the oral motion appears in the record. While we are aware that defendant may have waived the conflict issue because he failed to raise it in the robbery case (*People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227), we shall nevertheless consider the issue on appeal since the record does show some concern on the part of the first trial court.

■■ This court has ruled that where two or more defendants have antagonistic defenses, they are entitled to separate counsel. (*People v. Sprinkle*.) Merely because one defendant pleads guilty and another requests a trial, the defenses are not antagonistic (*People v. Barren* (1975), 32 Ill. App. 3d 78, 335 N.E.2d 779), and there must be some clear showing of antagonism. In the instant case Drummer consistently maintained his innocence and defendant admitted guilt and made no attempt to implicate Drummer. As neither testified at the trial of the other, we fail to see how the defenses of defendant and Drummer were antagonistic (*People v. Barren; People v. Tucker* (1971), 3 Ill. App. 3d 273, 278 N.E.2d 141) or that a conflict was manifested.

■■ Defendant argues that any possibility of conflict, however remote,

denies him effective assistance of counsel. (*U. S. ex rel. Sullivan v. Cuyler* (3d Cir. 1979), 593 F.2d 512.) The subtle influences which may affect counsel's advice to his client require that separate counsel be appointed as a matter of policy where a conflict exists. (*People v. Krause* (1972), 7 Ill. App. 3d 701, 288 N.E.2d 530.) Mere consent to representation by counsel or an expression of satisfaction with counsel are not the equivalent of a knowing and understanding waiver of a possible conflict of interest. *People v. Krause.*

In the instant case, defendant has alleged that the conflict exists merely by joint representation. It must be noted, however, that this allegation of a conflict was made in the burglary case and not the robbery case. Defendant argues that the connection between the burglary and robbery cases is that he was sentenced to a longer term on the burglary charge because he was convicted on the robbery charge. Assuming such contention to be true, it nevertheless follows that if we find the defenses on the robbery charge were not antagonistic and no conflict existed, then we must also find that the effect of the robbery conviction on the burglary sentence is irrelevant on the conflict issue.

Defendant next argues that his stipulated bench trial was tantamount to a guilty plea and therefore he should have been admonished under Supreme Court Rule 402. (Ill. Rev. Stat. 1977, ch. 110A, par. 402.) The only exception to this rule is where a genuine defense has been presented at the trial. (*People v. Stepheny* (1974), 56 Ill. 2d 237, 306 N.E.2d 872; *People v. Smith* (1974), 59 Ill. 2d 236, 319 N.E.2d 760; *People v. Russ* (1975), 31 Ill. App. 3d 385, 334 N.E.2d 108.) In the instant case no defense evidence was tendered, and defendant therefore contends no genuine defense was presented at trial, so the stipulated bench trial was tantamount to a guilty plea.

This is an oversimplification of the law. At the trial defendant did object to "* * * any testimony involving identification by Mr. Jones at the show-up or any testimony of the statement that this defendant gave to Officer Crady for the reason stated in the motion to suppress." Counsel did state that his purpose was to preserve the matter for appeal. We decided the same issue in *People v. Sullivan* (1979), 72 Ill. App. 3d 533, 391 N.E.2d 241. Preservation of matter for appeal is the purpose behind a stipulated bench trial. A plea of guilty would have waived any error in the denial of the motion to suppress. *People v. Jackson* (1970), 47 Ill. 2d 344, 265 N.E.2d 622.

*Sullivan* requires only that the trial court be presented with a defense, either actually established or included in the stipulation. If there is no defense, the stipulated bench trial is tantamount to a plea of guilty. If there is some disputed matter for the court to decide, even if that decision might be subject to attack on the basis of *res judicata*, the stipulated

bench trial is not tantamount to a plea of guilty and Rule 402 admonitions need not be given. (*People v. Sullivan.*) In the case at bar, the motion to suppress presented such a disputed matter for the court to decide and therefore Rule 402 admonitions would be inappropriate.

■■ Defendant argues that the disparate sentences he was given on the robbery and burglary charges violated fundamental fairness. We do not agree. While robbery is usually considered a more serious crime than burglary and therefore a harsher sentence is usually imposed, we believe the trial courts were justified in imposing the sentences. As there was no plea-bargaining agreement, Judge Stone was free to impose what he deemed an appropriate sentence. He could consider the robbery conviction and he did. We find no abuse of discretion.

Lastly, since we have not reversed the robbery conviction, we will not remand the burglary case for rehearing.

For the reasons stated above, the judgment of the circuit court of Peoria County is hereby affirmed.

Affirmed.

BARRY and STENGEL, JJ., concur.