THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL WILLIAMS, Defendant-Appellant.
First District (1st Division)   No. 1—86—2289

Opinion filed December 18, 1989.

MANNING, P.J., specially concurring.

Michael J. Pelletier and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kathleen Warnick, Special Assistant State's Attorney, and Inge Fryklund, Assistant State's Attorney, of Counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a bench trial, the defendant, Michael Williams, was convicted of murder and sentenced to 80 years' imprisonment. Defendant appeals from the conviction and the sentencing.

On appeal, defendant contends that (1) he was denied effective assistance of counsel; (2) his confession, fingerprints and palm prints

were improperly admitted since they were the fruit of an illegal arrest without probable cause; (3) he was denied due process where the trial judge was predisposed to sentence defendant to 80 years' imprisonment if he was convicted; (4) it was improper to impose an extended-term sentence since this crime was the product of defendant's chronic alcoholism; (5) that the sentence of 80 years' imprisonment was excessive; and (6) he was denied his due process right to be present where the motion for a new trial was heard and denied in his absence.

At trial, Carol Dirschle, the victim's sister, testified that she last spoke to her sister, Karen Easton, on Thursday, May 23, 1985, at approximately 4 p.m. At that time, the victim's boyfriend, Gary Amos, was with her at her apartment at 6240 South Kedzie in Chicago. Amos visited with the victim until approximately 3 a.m. that evening and made plans to pick the victim up at 10:30 a.m. on Saturday, May 25, 1985. On May 26, 1985, Dirschle went to her sister's apartment along with Amos. She found her sister lying next to her bed on the floor in an unconscious state. On June 6, 1985, the victim died at Cook County Hospital.

Gary Amos testified that he accompanied Karen Easton to her apartment on Thursday evening, May 23, 1985. He stayed there until approximately 3 a.m. and before leaving made plans to pick up the victim at 10:30 a.m. on Saturday, May 25, 1986. He testified that when he came back to the apartment on Saturday morning, no one answered the door. Amos repeatedly tried to reach the victim that Saturday, including leaving a note at her apartment, but was unsuccessful. On Sunday, May 26, 1985, he went back to her apartment at about 1 p.m. and no one answered the bell. He eventually got in contact with the victim's sister, Carol Dirschle, and went to the victim's apartment with her sister. They entered the apartment with the key which Carol Dirschle had and found the victim lying naked on the floor alongside her bed. Amos identified photographs of how the victim looked when she was found, including a photo which showed contusions, bruises and marks on the throat area. A photograph of the victim's bathroom showed wooden chips on the floor and a door jamb which was splintered and broken. The door latch for the bathroom lock was completely broken away from the original setting and a piece of the closing mechanism was found on the floor.

Police officer Thomas Cannova testified that on May 29, 1985, he received information that he should talk to the defendant regarding a battery. Cannova went to defendant's third-floor apartment at 6253 South Whipple in Chicago and knocked on the door. Defendant an-

swered the door, and Officer Cannova displayed his badge, introduced himself and told defendant that the police were conducting an investigation regarding a battery of a young woman and that he was needed for questioning. Defendant asked if he had to come to the police station, to which Officer Cannova responded that he did not, "but if he didn't have anything to worry about, why wouldn't he come." Defendant agreed to accompany Officer Cannova, and the officer gave defendant his *Miranda* rights. Officer Cannova further stated that he did not handcuff the defendant or place him under arrest.

Defense counsel and the State stipulated that if William Cummings were called to testify, he would state that on May 23, 1985, he resided in a third-floor apartment at 6240 South Kedzie and that, at 3:15 a.m. on May 24, 1985, he was sleeping when his friend, the defendant, knocked on his door and asked him to come out and have a few drinks with him. The defendant was drunk, and Cummings told him that he was going back to bed. At that time the defendant became abusive and loud and Cummings shut the door and returned to bed.

On May 29, 1985, the defendant was brought into police headquarters for questioning. Detective Tuider testified that he and Detective Quillis first took defendant's finger and palm prints and then proceeded to interview him. Tuider asked the defendant as to his whereabouts on the evening of May 23, 1985, and the early morning hours of May 24, 1985, and the defendant stated that he was home sleeping. Tuider then confronted the defendant with the statement by William Cummings, and the defendant stated that his original story must have been mistaken, and that he remembered going to a tavern and doing some drinking, but didn't remember what happened after that and just remembered waking up in the morning at home. Detective Tuider left the defendant in the interview room for several hours. When Tuider returned, the defendant asked to speak to an assistant State's Attorney.

Assistant State's Attorney James Kogut testified that he spoke to defendant at about 11:15 p.m. on May 29, 1985, explained that he was an assistant State's Attorney and not defendant's lawyer, and advised defendant of his rights. Defendant initially stated that he had been drinking and went home after going to the Last Minute Lounge on 63rd Street in Chicago and that he did not remember anything else. Kogut then confronted the defendant with evidence he had linking defendant to the scene. Defendant then stated he remembered being at the building but did not remember knocking on Cummings'

door. Defendant stated he did not remember his whereabouts from 3 a.m. to 3:45 a.m. Kogut told the defendant that he would be on duty until 7 a.m. and to call him if he remembered anything. Defendant asked to speak to Kogut again at about 1 a.m. Kogut reentered the interview room and readvised the defendant of his *Miranda* rights. The defendant told Kogut that he had been drinking at the Last Minute Lounge beginning at 4:30 p.m. on May 23, 1985, and left the lounge to find someone to continue partying with him. He went to the home of his friend, William Cummings, but Cummings told him to go away and slammed the door in his face. A door then opened across the hall, and there was a girl standing there. The defendant stated he pushed his way in and had a conversation with the girl and tried to talk the girl into partying with him. He indicated he had a beer with the girl, and thereafter, she fled into the bathroom and locked the door, but the defendant pushed the door down. The defendant grabbed her throat and dragged her into the bedroom. Defendant's statement was reduced to writing, and he was placed under arrest.

The parties stipulated that Dr. Robert Stein, the Cook County medical examiner, would testify that the cause of the victim's death was manual strangulation complicated by bronchial pneumonia and empyema. It was also stipulated that he found contusions on the victim's forehead and arm and abrasions on her nose and leg. The parties also stipulated that the testimony of Chicago police department fingerprint expert John A. Olejnicjak would establish that the defendant's left palm print and thumb print were found on the exterior of the bathroom door in the victim's apartment.

Defendant first argues that his conviction should be reversed because he was denied the effective assistance of counsel where the assistant public defender did not cross-examine the State's witnesses, did not present any evidence, did not make any opening or closing argument and failed to participate in the bench trial before the trial court. Defendant argues that under these circumstances, prejudice to him must be presumed. The State maintains that where the strategy of the defendant and his attorney was to proceed by way of a bench trial which consisted largely of stipulated evidence and which was designed to preserve defendant's pretrial motions and to spare him the death penalty, the defendant was not denied effective assistance of counsel.

■ In *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, the Supreme Court established the requisites for a claim of ineffective assistance of counsel. To prevail, a

defendant must show: (1) counsel's representation fell below an objective standard of reasonableness; and (2) that deficiencies prejudiced the defendant thereby depriving him of a fair trial, and but for such deficiencies the result of the proceedings would have been different. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.

■■ In *United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039, the companion case to *Strickland*, the Court stressed the need for counsel to act as a true advocate of the accused. The Court concluded "[t]he right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." (*Cronic*, 466 U.S. at 656, 80 L. Ed. 2d at 666, 104 S. Ct. at 2045.) This constitutional guarantee is violated when the process loses its character as confrontation between adversaries. *Cronic*, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039.

■■ Based on the record presented before us, it cannot be said that the public defender acted as an advocate for defendant. At the beginning of the trial in the case at bar, the parties agreed to litigate defendant's motion to quash arrest and motion to suppress statements during the trial. The defense counsel requested that the defendant undergo a behavioral clinical examination, including an alcohol EEG. The results of the examination revealed no abnormalities. Subsequently, the defendant waived a jury trial, and the trial judge explained to defendant the difference between a bench and a jury trial, and the following exchange took place:

> "THE COURT: Do you understand a lot of this trial is going in on stipulation? You understand on a finding of guilty here, I could sentence you to basically to capital punishment, number one, which is death; or number two, I could sentence you to natural life; or I could give you up to eighty years. Do you understand that?
>
> MR. WILLIAMS: Yes, I understand.
>
> THE COURT: Okay. I understand—you understand that I could give you up to twenty to eighty, and I said to your attorney if I found you guilty, I would give you at least eighty years. You understand that?
>
> MR. WILLIAMS: Yes, I understand.

THE COURT: Nobody promised you anything, nobody threatened you in any way, is that correct?

MR. WILLIAMS: Yes."

Both the State and defense counsel waived opening arguments. Carol Dirschle, Gary Amos and Officer Cannova testified as to the circumstances surrounding the victim's death. The assistant public defender did not cross-examine these witnesses. He noted for the record that he had filed a motion to quash defendant's arrest and he would be standing on that motion. The testimony of William Cummings was admitted by stipulation. Detective Tuider testified as to his contact and interrogation with the defendant and was not cross-examined. The assistant public defender stated that he had filed a motion to suppress defendant's confession. Assistant State's Attorney James Kogut testified and was not cross-examined. The parties stipulated to the testimony of Dr. Stein, who performed the autopsy on the victim. The State rested its case, and the assistant public defender made a motion for a directed finding as to numerous counts of the indictment. The court denied the motion, and the assistant public defender presented no evidence on behalf of defendant. Both the State and defense counsel waived closing arguments, and the trial court found the defendant guilty. Subsequently, at the sentencing phase, the assistant public defender filed five motions regarding the constitutionality of the death penalty statute. The assistant public defender also filed a memorandum in mitigation detailing defendant's long-term chronic and acute alcoholism. Since the defense counsel did not present an opening or closing statement, did not conduct cross-examination of any of the State's witnesses and failed to obtain a ruling on the pretrial motions, in our judgment, there was a failure to subject the prosecution's case to meaningful adversarial testing. As such, the assistant public defender's lack of participation at trial deprived defendant of the effective assistance of counsel at trial. See *Martin v. Rose* (6th Cir. 1984), 744 F.2d 1245; *People v. Garza* (1989), 180 Ill. App. 3d 263, 535 N.E.2d 968; *People v. Coss* (1977), 45 Ill. App. 3d 539, 359 N.E.2d 1172.

■ The State contends that although the defendant technically did not plead guilty, his actions were the functional equivalent of a guilty plea. There is no indication in the record, however, that the defendant at any time wanted to plead guilty, and an attorney cannot make that decision for his client. (*People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513.) The only plea entered by the defendant was the plea of not guilty entered at the arraignment. There is no further indication in the record that defendant ever indicated a willing-

ness to withdraw his not guilty plea and enter a guilty plea. The public defender's strategy, which for all practical purposes conceded his client's guilt, but attempted to show that defendant was undeserving of the death penalty, was totally at odds with defendant's plea of not guilty. "[E]ven when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond a reasonable doubt." *United States v. Cronic* (1984), 466 U.S. at 656 n.19, 80 L. Ed. 2d at 666 n.19, 104 S. Ct. at 2045-46 n.19.

Defendant contends that prejudice in this case must be presumed, citing *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513. We agree. In *Hattery*, the defendant was charged with murder and pleaded not guilty and the defense counsel, in an attempt to avoid the death penalty, admitted the defendant's guilt in his opening statement to the jury and attempted to establish on cross-examination that the defendant was compelled to kill his victims. The court reversed his conviction, holding that he was denied the effective assistance of counsel where the prosecution's case was not subjected to the meaningful adversarial testing required by the sixth amendment and, therefore, prejudice was presumed. Further, the *Hattery* court held that where a defendant enters a plea of not guilty but defense counsel's strategy is not structured around his plea, the record must show that defendant knowingly and intelligently consented to the strategy. In the case at bar, there is no evidence that the defendant consented to a trial by stipulation and, as the *Hattery* opinion states, consent will not be presumed from a silent record. The record reveals that the defendant did not respond when asked whether he understood that a large part of the trial was proceeding on stipulations. Since there is no evidence in the record that defendant consented to the assistant public defender's strategy and because his defense was not structured around defendant's plea of not guilty, we hold defendant was denied the effective assistance of counsel in violation of the sixth amendment.

■■ Since this case must be remanded for a new trial, we find it unnecessary to consider the remaining issues raised by the defendant. We note, however, that we believe the evidence presented at trial was sufficient to conclude that the defendant was guilty beyond a reasonable doubt. We do not mean we are making a finding as to the defendant's guilt or innocence which would be binding on retrial; but, rather, our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting the defendant to double jeopardy. *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366.

For the reasons stated, the judgment of the circuit court of Cook County is reversed and this cause is remanded for a new trial.

Reversed and remanded.

BUCKLEY, J., concurs.

PRESIDING JUSTICE MANNING, specially concurring:
While I agree that defendant has established the requisites of ineffective assistance of counsel, and hence, agree with the result reached here today, I believe that we need to address in detail the inappropriateness of the procedures utilized in this particular case. Further, I wish to address the basis for my concurrence in the majority's finding that defendant was deprived of his sixth amendment right to effective assistance of counsel in light of and in response to the State's assertion that this stipulation was tantamount to a plea of guilty.

Under certain circumstances, most of the procedures utilized in the case at bar would be perfectly proper. The State asserts that the defendant's stipulation was tantamount to a plea of guilty. With that I agree. That, though, is where our agreement ends. Contrary to the State's assertion, not all stipulations of fact transform a conviction into a guilty plea. (*Thornton v. Illinois Founders Insurance Co.* (1981), 84 Ill. 2d 365, 372, 418 N.E.2d 744.) Specifically, where a defendant stipulates to facts underlying an offense but the decision of guilt or innocence based on those facts is left to the trier of facts, the stipulation is not the equivalent of a guilty plea. (*Thornton*, 84 Ill. 2d at 372.) However, our courts have held that where a defense, either factual or legal, is not presented, a stipulated bench trial is tantamount to a plea of guilty, and Rule 402 (107 Ill. 2d R. 402) admonitions are required. (*People v. Carlton* (1980), 81 Ill. App. 3d 738, 743, 402 N.E.2d 310; *People v. Sampson* (1985), 130 Ill. App. 3d 438, 441-42, 473 N.E.2d 1002.) In light of these decisions, it can be concluded that where a defendant does plead guilty or stipulates to the facts without asserting a defense, that defendant is entitled to all of the safeguards afforded by compliance with Supreme Court Rule 402. Mr. Williams did not receive such safeguards.

In the instant case, implicit from the record is the fact that defendant's purpose in stipulating to the facts was twofold, *i.e.*, to escape the death penalty and to preserve any legal defenses set forth in defendant's pretrial motion for purposes of appeal. Hence, under certain circumstances this partially stipulated bench trial would not be tantamount to a plea, and no Rule 402 admonitions would be required. The problem arises, however, when in examining the record, I find there is no indica-

tion that a defense was established or included in the stipulation. While the record suggests that defendant's intentions were to include a defense, his attorney's efforts fell far short by his failure to advocate in defendant's behalf in connection with the motion to suppress. Unlike the case of *People v. Carlton*, where immediately prior to a stipulated bench trial, the defendant interposed an objection at trial to certain identification testimony which had been the subject of a contested hearing on a motion to quash and suppress evidence, in the case at bar, while a motion to suppress was filed, there was no meaningful hearing due to the lack of cross-examination, no presentation of defense evidence, no objection to the introduction of the evidence referred to in the motion to suppress, in fact a stipulation to it, and most importantly, no ruling on the motion.

In *People v. Sullivan* (1979), 72 Ill. App. 3d 533, 536-37, 391 N.E.2d 241, citing *People v. Russ* (1975), 31 Ill. App. 3d 385, 334 N.E.2d 108, this court held that where the trial court is presented with a defense, either actually established or included in the stipulation, a stipulated bench trial requires no Rule 402 admonitions. (See also *People v. Carlton* (1980), 81 Ill. App. 3d 738, 743-44, 402 N.E.2d 310.) In the instant case, while the defense attorney said he was standing on the motion, he actually on behalf of defendant presented no evidence on the motion, did not cross-examine any witnesses, presented no argument to support his theory, and sought no ruling.

While the majority finds that defendant did not consent to a stipulated trial, I think such an assertion belies the record, since implicit in his silence after stating that he understood was consent. The court inquired as follows:

> "THE COURT: Do you understand a lot of this trial is going in on stipulation? You understand on a finding of guilty here, I could sentence you to basically to capital punishment, number one, which is death; or number two, I could sentence you to natural life; or I could give you up to eighty years. Do you understand that?
>
> MR. WILLIAMS: Yes, I understand."

Based upon the filing of the motion to suppress the evidence, it appears clear that defendant sought to establish a defense. However, the failure of the defense attorney to advocate in connection with the motion and to secure a ruling on the motion to suppress, in my judgment, falls short of establishing a defense or including it in the stipulation. At the very least the defendant was entitled to Rule 402 admonitions. Had such admonitions been given, the defendant could have articulated any displeasure he might have felt with such pro-

ceedings, if they were contrary to his desires, and the court would have been informed regarding his exact intentions.

For the foregoing reasons, I agree that in this particular instance, defense counsel's representation fell far short of being effective, defendant was prejudiced thereby, and because it lacked the adversarial qualities upon which our judicial system is predicated, the defendant has easily met the *Strickland v. Washington* standards.