**Jeffrey Allen KING, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 90–176.

Supreme Court of Wyoming.

April 29, 1991.

Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, and Donald F. Carey, Student Intern, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Karen A. Byrne, Senior Asst. Atty. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, and Daniel L. Darlow, Student Intern, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

Jeffrey Allen King (King) claims he was denied effective assistance of counsel to the point of reversible error.

We agree and reverse and remand.

## I. ISSUES

King argues that reversible error occurred in his trial because:

### ARGUMENT I

The defendant was denied effective assistance of counsel as guaranteed by the Sixth Amendment.

This claim was supported by three arguments:

A. Defense counsel's failure to effect service of process on an eye witness, or in the alternative, to request a continuance until that eye witness could be compelled to testify, is *per se* ineffective assistance of counsel.

B. Defense counsel's failure to invoke the use of compulsory process to obtain witnesses on behalf of defendant is a failure to provide the defendant with effective assistance of counsel.

C. Defendant was denied effective assistance of counsel when the trial court failed to investigate possible conflicts of interest which may have affected defense counsel's ability to provide a defense.

### ARGUMENT II

The State interfered with the defendant's right to effective assistance of counsel.

## II. FACTS

Pamela Thompson (Thompson) and King related sexually with one another for several months. Thompson had considered their relationship as one of lovers, but King said he considered himself more akin to a male prostitute than her lover. Whatever the quality of their relationship, it abruptly ended in April of 1989 when Thompson found King in bed with another person. One month later, Thompson was charged with delivery of a controlled substance. She quickly agreed to participate in a sting operation that targeted her former friends, King and Grant Judd.

While she was in jail, an attorney came to represent her and arranged to get her out of jail and into the Pineridge Hospital for treatment. Two other attorneys appear to have handled her felony charges and to have negotiated a plea bargain agreement that required Thompson to cooperate in a sting operation that targeted King and to testify against him. For her full cooperation, she received a deferred prosecution of the charges against her, which could then be dismissed. Thompson became the principal witness against King. Her initial attorney, who had made the arrangements that freed her from jail, then became King's defense attorney while other counsel, apparently from the public defender's office, continued her representation. *See Allen v. District Court In and For Tenth Judicial Dist.*, 184 Colo. 202, 519 P.2d 351 (1974). *See also* Steinberg and Sharpe, *Attorney Conflicts of Interest: The Need for a Coherent Framework*, 66 Notre Dame L.Rev. 1 (1990); and Webster, *The Public Defender, The Sixth Amendment, and The Code of Professional Responsibility: The Resolution of a Conflict of Interest*, 12 Am.Crim.L.Rev. 739, 742 (1975).

During trial, Thompson testified to one version of events. She began her cooperation in the sting operation against King by going to the Riverton police station. Her vehicle was searched and an electronic transmitter was placed into her purse. She said she then went in search of King and found him in the home of Linda King, King's ex-wife, along with their two chil-

dren. She described asking King if she could buy some marijuana and, at his direction, Linda King went into the kitchen and brought her a canning jar filled with the illegal plant. Following agreement to pay $40 dollars per quarter ounce and to buy a quarter pound of marijuana for six hundred dollars, she left, saying she would return later. Upon return, she found King alone, working on his car in the alley. She related that they talked for awhile before returning to his car to retrieve a towel containing sixteen baggies of marijuana for which she paid him $750.

Although all conversations between Thompson and King were said to have been secretly recorded by the police, apparently the recording was garbled to the point that it was useless as trial evidence. The absence of a mechanical recording made particularly critical the issue of credibility between prosecution and defense witnesses.

At trial, King testified to an entirely different version of events. Among other things, he testified that when Thompson came to Linda King's house he was out in back with his brother Ike King, Ross Moore, Melvin Jewart, and Grant Judd. He also said that Ike King and others had been with him working on his car in the alley when Thompson came back. He indicated at trial that he had avoided non-alcoholic drug use since his urine was being tested weekly because of federal drug charges and that he tried to avoid Thompson since she was known to be an informant. He also testified that she tried unsuccessfully to sell him sixteen baggies of marijuana when she pulled up in the alley as he and others worked on his car.

Two other defense witnesses testified that Thompson pulled into the alley and motioned for King to come over to her car and that he soon began to yell at her. Thompson had testified that King had gone back to his car to get a green towel containing marijuana, but both defense witnesses testified that King never went back to his car.

Only four days before trial, King's attorney issued a subpoena for the Sheriff's office to serve on Linda King. The Sher-

iff's department reported that several unsuccessful attempts were made to serve her, although the house lights were on and no one appeared at the door on the date service was attempted. When Linda King did not appear at trial, King's attorney did not move for a continuance. Consequently, the potential eye witness to the alleged illegal transaction was not made available to testify at King's trial. There is no indication in the record that King's defense attorney had tried, in advance, to interview Linda King to determine her availability for a trial appearance or even what her testimony might be.

Ike King was also not subpoenaed to testify. Ike King was on probation in Colorado when he called Bud Waldron, a Wyoming Probation Officer, leaving a message on Waldron's recorder that he wanted to return to Wyoming. Waldron called the Department of Corrections in Colorado to tell them Ike King should not be allowed to return to Riverton. Mr. Waldron said he had asked an associate to call the Department of Corrections in Colorado back to tell them Ike King could return once he discovered Ike King wanted to testify. But he also said he was unaware if that had been done. The defense attorney never issued a subpoena to compel Ike King to appear to testify, nor did he move for a continuance until that testimony could be compelled. This was potentially the second eye witness to the alleged illegal transaction who did not testify at King's trial. There is also no indication in the record that King's defense attorney had interviewed Ike King who could have been a very significant witness to address the clear testimonial conflict.

At trial, King asked the trial court to appoint a new defense attorney. King argued that his attorney had not procured eye witnesses in his behalf and that there was a conflict of interest because his defense attorney had represented Thompson when she was transferred from jail to the Pineridge Hospital. The trial court refused and the trial continued. King was convicted and sentenced to six to ten years for both counts, to be served concurrently with one another but consecutive to all other

sentences for convictions entered previously to the extent permissible by law.

King appealed.

## III. DISCUSSION

The Sixth Amendment guarantees *effective* assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 654, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657 (1984). The United States Supreme Court reviews claims of ineffective assistance of counsel due to incompetency under the standard of review adopted in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984) and reviews claims of ineffective assistance of counsel due to conflicts of interest under the standard of review adopted in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *See Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067 and *State v. Jenkins*, 148 Ariz. 463, 715 P.2d 716, 718 (1986).

The criminal defendant's Sixth Amendment right to effective assistance of counsel coincides with the state's compelling interest in assuring that a prosecutor is countered at trial by a defense attorney who is aggressive and effective enough to make the adversarial process perform as designed. *See Frias v. State*, 722 P.2d 135, 147 (Wyo.1986) and *Cronic*, 466 U.S. at 655–56, 104 S.Ct. at 2044–45. The adversarial process is designed to both produce the truth and reveal what methods the government is employing in its attempt to deprive an individual of life, liberty, or property. When the adversarial process breaks down, the results are unreliable and can be tragic. *See White v. Frank*, 855 F.2d 956 (2nd Cir.1988); *Charles v. Wade*, 665 F.2d 661 (5th Cir.1982), *cert. denied* 460 U.S. 1036, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983); and *Ross v. Kemp*, 260 Ga. 312, 393 S.E.2d 244 (1990). *See also* Bedau & Radelet, *Miscarriages of Justice in Potentially Capital Cases*, 40 Stan.L.Rev. 21 (1987). *Cf. Burden v. Zant*, —— U.S. ——, 111 S.Ct. 862, 112 L.Ed.2d 962 (1991).

Because the defendant's guarantee of effective counsel is best protected by a robust adversarial process, this court's primary focus remains on the reliability of the adversarial process when reviewing a claim of ineffective assistance of counsel, whether through incompetency or through conflicts of interest. *See Cronic*, 466 U.S. at 657 n. 21, 104 S.Ct. at 2046 n. 21. In addressing effective assistance of counsel, we protect one of a person's "most fundamental of rights." *Penson v. Ohio*, 488 U.S. 75, 84, 109 S.Ct. 346, 351–52, 102 L.Ed.2d 300 (1988). " 'The need for defense counsel to be completely free from a conflict of interest is of great importance and has a direct bearing on the quality of our criminal justice system.' " *McCall v. District Court For Twenty–First Judicial Dist.*, 783 P.2d 1223, 1227 (Colo.1989) (quoting *Allen*, 519 P.2d at 352–53). *See also State v. Martinez–Serna*, 166 Ariz. 423, 803 P.2d 416 (1990) and *Richards v. Clow*, 103 N.M. 14, 702 P.2d 4, 7 (1985).

## III(A). CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL BASED ON INCOMPETENCY

■ While the *Strickland* test normally requires the appellant demonstrate the attorney's performance that was deficient and the prejudice occasioned by that deficient performance, there are single deficiencies in performance that "can so prejudice the right of a defendant to a fair trial that [they] will serve to support a conclusion that reasonably effective assistance was not afforded." *Gist v. State*, 737 P.2d 336, 343 (Wyo.1987). *See Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067 and *Cronic*, 466 U.S. at 659, 104 S.Ct. at 2047. Once an appellant demonstrates such deficient performance, there is no need to demonstrate prejudice. We consider "whether counsel's conduct fell 'measurably below that which might be expected from an ordinary fallible lawyer,' and, if so, whether that conduct 'likely deprived the defendant of an otherwise available, substantial ground of defense.' " *Com. v. Blake*, 409 Mass. 146, 564 N.E.2d 1006, 1016 (1991) (quoting *Com. v. Saferian*, 366 Mass. 89, 96, 315 N.E.2d 878 (1974)).

In *Gist*, 737 P.2d at 343 and *Frias*, 722 P.2d at 145, we reversed the convictions of

the appellants due to ineffective assistance of counsel. In both cases, the defense attorneys had not interviewed alleged eye witnesses and no justification was available in the record to explain why no interview was pursued. "The failure to pursue an interview [with an alleged eye witness] constitute[s] an abrogation of counsel's duty to * * * conduct a reasonable investigation and to utilize any information obtained in providing a reasonable defense." *Gist*, 737 P.2d at 343. When this deficiency is demonstrated, the appellant need not demonstrate the resulting prejudice, it is presumed. "Prejudice in [this circumstance] is so likely that case-by-case inquiry into prejudice is not worth the cost." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067. *See also Sanders v. Sullivan*, 701 F.Supp. 996 (S.D. N.Y.1987), also involving a failure to secure attendance at trial; and *Richardson v. State*, 189 Ga.App. 113, 375 S.E.2d 59 (1988), where proposed alibi witnesses were neither interviewed nor subpoenaed.

■ The defense attorney failed to secure the trial testimony of two potential eyewitnesses and, apparently, failed even to interview the witnesses. Strategic justification cannot be extended to the failure to investigate. *United States v. Gray*, 878 F.2d 702 (3rd Cir.1989); *Ex parte Welborn*, 785 S.W.2d 391 (Tex.Cr.App.1990); *State v. Thomas*, 768 S.W.2d 335 (Tex.Cr.App.1989). Having demonstrated such course of conduct by the defense attorney, King need not demonstrate prejudice—it is presumed. *People v. Williams*, 192 Ill.App.3d 304, 139 Ill.Dec. 353, 548 N.E.2d 738 (1989). The presumption of prejudice in a claim of ineffective assistance mandates reversal. *Lozada v. Deeds*, —— U.S. ——, 111 S.Ct. 860, 112 L.Ed.2d 956 (1991); *Strickland*, 466 U.S. 668, 104 S.Ct. 2052; *Abels v. Kaiser*, 913 F.2d 821 (10th Cir.1990); *Estes v. United States*, 883 F.2d 645 (8th Cir.1989).

### III(B). CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL BASED ON CONFLICTS OF INTEREST

■ *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067 indicated the continuing vitality of the conflict of interest standard formulated in *Cuyler*, 446 U.S. at 345–50, 100 S.Ct. at 1716–19. Under that standard, a defendant who raised no objection at trial must show that an actual conflict of interest adversely affected his lawyer's performance before prejudice is presumed.

To demonstrate a conflict of interest, the appellant may "demonstrate that some plausible alternative defense strategy or tactic might have been pursued * * * [and] establish that the alternative defense was inherently in conflict with the attorney's other loyalties or interests." *Brien v. United States*, 695 F.2d 10, 15 (1st Cir. 1982).

To demonstrate an adverse effect, the "defendant would only have to show that his attorney's conflict reduced his effectiveness." *Jenkins*, 715 P.2d at 720. "[A]dverse effect is a less burdensome requirement than prejudice." *Id.*

■ Because King raised his objections at trial, we review the denial of his request for new counsel under an abuse of discretion standard. "In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did." *Martinez v. State*, 611 P.2d 831, 838 (Wyo. 1980). Had the trial court seen to compliance with the Wyoming Rules of Professional Conduct for Attorneys at Law, King would have had no claim of ineffective assistance of counsel based upon conflicts of interest. Rule 1.7 of the Rules of Professional Conduct prohibited King's attorney from representing King if his representation was materially limited by his responsibilities to Thompson. Rule 1.9 of the Rules of Professional Conduct prohibited him from representing King without consulting with Thompson. "[T]he right to effective assistance of counsel has been violated when a lawyer represented both a defendant and the chief prosecution witness * * *." *People v. Ortiz*, 76 N.Y.2d 652, 563 N.Y.S.2d 20, 564 N.E.2d 630, 633 (1990) (citing *People v. Wandell*, 75 N.Y.2d 951, 953, 555 N.Y.S.2d 686, 554 N.E.2d 1274 (1990)).

Additionally, while we do not know if his representation of King would necessarily be materially limited by his responsibilities with Thompson, "[t]here is a presumption that an attorney receives confidential communications in the course of his representation of a client." *United States v. Shepard*, 675 F.2d 977, 980 (8th Cir.1982). Because "the attorney may misuse confidential information obtained from the former client, or may fail to fully cross-examine for fear of misusing confidential information," *id.* at 979, the reliability of the adversarial process cannot be confidently relied upon.

The specific difficulty in conflict representation presented here was discussed by the Colorado Supreme Court in *Rodriguez v. District Court for City and County of Denver*, 719 P.2d 699 (Colo.1986). "Since [prosecution witness and defense counsel] were in an attorney-client relationship, it must be presumed that she reposed confidences in her attorney." *Id.* at 704.

At trial, a public defender might well be restricted in any examination of [prosecution witness] because of the duty to maintain the confidentiality of information received by [defense counsel] from [prosecution witness]. *See Allen [v. District Court]*, 184 Colo. 202, 519 P.2d 351 [ (1974) ]. On the other hand, a public defender might also be tempted to use certain confidential information obtained from [prosecution witness] to impeach her trial testimony. Thus, an inherent conflict arose from the fact of the public defender's dual role as prior attorney to [prosecution witness] and present counsel for the petitioner. *See United States v. Agosto*, 675 F.2d 965 (8th Cir.), *cert. denied*, 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982); *United States v. Provenzano*, 620 F.2d 985 (3d Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); *United States v. Tocco*, 575 F.Supp. 100 (N.D.Ill.1983). *See generally* G. Lowenthal, *Successive Representation by Criminal Lawyers*, 93 Yale L.J. 1 (1983); *Developments in the Law—Conflicts of Interest in the Legal Profession*, 94 Harv.L.Rev. 1244, 1377 (1981).

*Id.* at 704. See likewise *Rosenwald v. United States*, 898 F.2d 585 (7th Cir.1990) and Developments in the Law, *Conflicts of Interest in the Legal Profession*, 94 Harv. L.Rev. 1244 (1981).

"If a defense attorney's scope of cross-examination of a key prosecution witness is restricted to avoid possible violation of the attorney-client privileges of the witness, then the defendant has major claims of ineffective assistance of counsel and lack of a fair trial. If the examination is not restricted, then the witness' attorney-client privilege may be violated." *Petition of Hoang*, 245 Kan. 560, 781 P.2d 731, 732–33 (1989), *cert. denied* — U.S. ——, 110 S.Ct. 1791, 108 L.Ed.2d 792 (1990). "The judge has a duty to maintain the integrity of the administration of the justice system." *Id.* 781 P.2d at 733. The trial judge should have evaluated King's claim and put into the record the reasons for rejecting King's claim for ineffectiveness of counsel based upon conflict of interest. *Wood v. Georgia*, 450 U.S. 261, 272, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Martinez–Serna*, 803 P.2d 416; *State v. Hatfield*, 51 Wash.App. 408, 754 P.2d 136 (1988); *Matter of Richardson*, 100 Wash.2d 669, 675 P.2d 209 (1983). The failure to do so constituted an abuse of discretion.

Reversed and remanded.

THOMAS, Justice, specially concurring.

I agree that this case must be reversed and remanded for a new trial. I would limit the grounds for reversal, however, to the failure to subpoena the witness, Ike King, and to the failure of the trial court to resolve an apparent conflict of interest on the part of defense counsel.

I cannot agree that the record justifies a conclusion that counsel was ineffective because he apparently failed to interview the witness, Linda King. A subpoena in fact was issued, and I am satisfied that ineffective assistance of counsel is not demonstrated by the failure to secure the subpoena more than four days prior to trial. The fact that the subpoena was issued leads to an inference that counsel had interviewed

Linda King and wished to secure her testimony.

Furthermore, the state of the record would suggest that the witness, Ike King, had been contacted and wanted to come to Wyoming. He was deterred by his probation situation, but those circumstances would lead to an inference that he had been interviewed. The ineffectiveness of counsel here lies in the failure to subpoena the witness which could have been done even though that witness resided in Colorado.

CARDINE, Justice, dissenting.

I cannot agree to reversal of this case and remand for new trial. There is no record presented by appellant that justifies the unjustified assertions of ineffective assistance of counsel. For example, the court states that "[t]here is *no indication* in the record that King's defense attorney had tried, in advance, to interview Linda King." Maj.op. at 121. And, later in the opinion, the court states: "The defense attorney * * * *apparently*, failed even to interview the witnesses." Maj.op. at 123. The fact is, defense counsel may have interviewed all the witnesses. The record is simply silent, and this court takes silence to mean that the witnesses were not interviewed. The burden is upon appellant to establish a record demonstrating ineffective assistance of counsel. Appellant must show that witnesses were not interviewed, and he has failed to do that in this case.

With respect to the failure to call witnesses, we have repeatedly said that may have been strategy of defense counsel. We are unable to tell from this record whether it was or not. Ike's nonappearance was explained as an honest misunderstanding which was later corrected. I am not prepared to say that the witness lied. A subpoena, issued for the wife four days before trial, was sufficient. The wife was present in the county subject to subpoena. Defense counsel may have decided she would be a poor witness or might not stand up on cross-examination. It is clear they could have produced her. The fact that defense counsel did not produce her as a witness or call her is as likely an intended strategy decision as not. In any event, because of the state of this record, we just do not know why she was not called. Again appellant does not present us with a record that tells what the witnesses would have testified to if called and that such testimony would have changed the result of the trial. The burden is that of the appellant, not the State. Having failed in that burden, it was not justification for reversal.

Finally, there is the suggestion of conflict of interest in this public defender representing appellant at the trial. Some considerable time before occurrence of the incident which gave rise to these charges, the public defender had provided his services to Pamela Thompson, then having serious drug problems and needing care and treatment, to obtain her admission to a treatment center for persons with drug problems. Pamela Thompson was placed in a drug treatment center, and that ended any contact defense counsel had with her. Sometime subsequent to defense counsel assisting in Pamela Thompson's placement for drug treatment, the incident which gave rise to these charges occurred. They are totally unrelated to anything that had occurred prior to this incident. There was absolutely no reason why the public defender could not represent this appellant in defending the charges made against him.

First, I would affirm. Rather than reverse, as the court now proposes, I would in the alternative remand this case to produce a proper record to present appellant's issues on appeal. When it becomes clear that a possibility of a conflict of interest exists, the trial court has a duty to make further inquiry. *Wood v. Georgia*, 450 U.S. 261, 272, 101 S.Ct. 1097, 1104, 67 L.Ed.2d 220 (1981). *See also Cuyler v. Sullivan*, 446 U.S. 335, 346, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980). The potential conflict here was brought to the court's attention in two ways. First, King's attorney asked about his former representation of the witness when she was cross-examined. Second, King brought it up when he asked for new counsel. At that time, the court did not inquire into the potential conflict but basically admonished King for

bringing this up at such a late time. The United States Supreme Court in *Wood* remanded the matter back to district court for an evidentiary hearing to determine whether an actual conflict existed. 450 U.S. at 273–74, 101 S.Ct. at 1104. Remand for such a hearing would surely be a better route to take here rather than reversal.

The majority opinion makes an assumption that King's attorney did not investigate to reach a conclusion of presumed ineffectiveness, and also suggests conflict of interest of defense counsel without any record support or any appellate defense counsel effort to make a proper record. Because there is no record and will be no record that supports a reversal of this conviction, I would at this time affirm. And I will continue to object to this kind of deficiency on appeal until appellants understand that they must come forth with a record that supports the claims now asserted by conjecture and innuendo.